**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| T.T. INTERNATIONAL CO., LTD., | |
| Plaintiff, | |
| v. | CASE NO.: |
| BMP INTERNATIONAL INC., BMP USA, INC., and iGAS USA, INC., | |
| Defendants. | |

## COMPLAINT

Plaintiff T.T. International Co., Ltd. ("T.T." or "Plaintiff") sues Defendants, BMP International, Inc., BMP USA, Inc., and iGas USA, Inc. (collectively the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.       This is an action for damages arising out of T.T.'s shipment and the Defendants' acceptance of (a) over $14 million of refrigerants, disposable cylinders, and related products to Defendant BMP International; (b) over $58 million of refrigerants, disposable cylinders, and related products to Defendant BMP USA; and (c) over $1 million of refrigerants, disposable cylinders, and related products to Defendant iGas USA.  Thus, the Defendants owe T.T. in excess of $70 million, plus interest.

2.       The shipments are evidenced by, among other things, invoices issued by T.T. to each of the three Defendants, as follows:

a.  Complete, accurate, and authentic copies of the invoices for T.T.'s shipments to Defendant BMP International are attached as composite **Exhibit A** (the "BMP International Invoices").  These invoices are dated between June 9 and August 1, 2017.

b.  Complete, accurate, and authentic copies of the invoices for T.T.'s shipments to Defendant BMP USA are attached as composite **Exhibit B** (the "BMP USA Invoices").  These invoices are dated between July 28, 2017 and May 25, 2018.

c.  Complete, accurate, and authentic copies of the invoices for T.T.'s shipments to Defendant iGas USA are attached as composite **Exhibit C** (the "iGas USA Invoices").  These invoices are dated between July 10 and 25, 2018.

3.      The Defendants received, retained, and in all or some instances resold these goods.  However, they have refused and failed to pay T.T. for these refrigerants, disposable cylinders and related products.  Consequently, T.T has suffered damages in excess of $70 million.

**THE PARTIES**

4.      Plaintiff T.T. is a company organized under the laws of the People's Republic of China, which at all material times had its principal place of business in Dalian, China.

5.      Defendant BMP International is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

6.      Defendant BMP USA is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

7.      Defendant iGas USA is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between the citizens of a State and a citizen of a foreign state.

9.      The Court has personal jurisdiction over BMP International because it is a citizen of Florida.

10.     The Court has personal jurisdiction over BMP USA because it is a citizen of Florida.

11.     The Court has personal jurisdiction over iGas USA because it is a citizen of Florida.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BMP International, BMP USA, and iGas USA reside in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

13.     T.T. is engaged in the business of manufacturing and selling of refrigerants, disposable cylinders, and related products.  T.T. often works with importers in countries such as the United States to sell its products into markets outside of China.  T.T. does not maintain any offices, employees, or agents within the United States.  Nor does T.T. itself import product into the United States.

14.     The Defendants are business organizations that, among other things, import refrigerants, disposable cylinders, and related products to the United States.  The Defendants market themselves as wholesalers of refrigerant and related products.  Accordingly, the Defendants resell the refrigerant and related products that they receive from T.T. and presumably other suppliers.

15.     At all relevant times, the Defendants were controlled, in whole or in part and directly or indirectly, by Xianbin "Ben" Meng, who resides in the Tampa Bay area.

16.     On or about February 1, 2012, Meng contacted T.T. by email on behalf of BMP International.  Meng stated that he viewed T.T.'s materials at the AHR Expo in Chicago—an industry trade show—and that he wanted a price quotation for several refrigerants.

17.     At all relevant times, Meng controlled and directed the operations of BMP International.  On information and belief, Meng has served, and continues to serve, as BMP International's president.

18.     As Meng requested, T.T. provided a price quotation for refrigerants and related products.  Meng subsequently notified T.T. that BMP International accepted its proposed terms.

19.     Consequently, T.T. sent invoices and shipping documents for BMP International's first order to Meng.  In or about August 2012, T.T., through its shipping agent, shipped the refrigerants and related products that BMP International had ordered to an address in Tampa, Florida that Meng had provided.

20.     T.T.'s invoices for BMP International's orders placed in 2012 stated the number and type of packages, described the goods and quantity, provided shipping details, and

included the following terms of payment: "10% against proforma invoice, 90% balance before arriving".

21.     On or about March 27, 2015, T.T. transmitted the first invoice to BMP International that substituted "O/A 60 days" as the term of payment.  The term "O/A" means "open account."

22.     During the month of September 2015, T.T. transitioned to using "O/A 60 days from B/L date" as the term of payment on all invoices it sent to the Defendants and their related entities.  The term "B/L" means "bill of lading."

23.     At Meng's request, in or about June 2015, T.T. began shipping refrigerants and related products to Defendant BMP USA.

24.     The invoices and shipping documents that T.T. sent to BMP USA for these goods were identical or substantially similar in form to those that T.T. utilized for BMP International and, accordingly, they contained essentially the same information.

25.     At all relevant times, Meng controlled and directed the operations of BMP USA.  On information and belief, Meng has served, and continues to serve, as BMP USA's president.

26.     At Meng's request, in or about August 2015, T.T. began shipping refrigerants and related products to LM Supply, Inc.  Meng represented to T.T. that BMP International controlled LM Supply and was responsible for making payments on its behalf.

27.     The invoices and shipping documents that T.T. sent to LM Supply for these goods were identical or substantially similar in form to those that T.T. utilized for BMP International and BMP USA.  Accordingly, they contained essentially the same information.

28.     Thus, BMP International (a) placed orders with T.T. for LM Supply; and (b) paid for the refrigerants and related products that T.T. shipped to LM Supply from one of the same accounts which BMP International made payments for goods it received from T.T.

29.     At Meng's request, in or about March 2016, T.T. shipped refrigerants and related products to BMP International while invoicing "R Lines."  On information and belief, R Lines is controlled, in whole or in part and directly or indirectly, by Meng.   BMP International served as the consignee on the corresponding shipping documents and made payment for the goods shipped.

30.     The invoices and shipping documents that T.T. sent to R Lines for these goods were identical or substantially similar in form to those that T.T. utilized for BMP International and other Meng-controlled companies.   Accordingly, they contained essentially the same information.

31.     Thus, BMP International (a) placed orders with T.T. ostensibly in the name of R Lines; and (b) paid for the refrigerants and related products that T.T. shipped to BMP International with invoices in R Lines' name but with shipping documents showing BMP International as consignee.

32.     At Meng's request, in or about June 2016, T.T. began shipping refrigerants and related products sending invoices to Assured Comfort AC, Inc.  Meng represented that BMP International controlled Assured Comfort, and was responsible for making payments on its behalf.

33.     The invoices and shipping documents that T.T. sent to Assured Comfort for these goods were identical or substantially similar in form to those that T.T. utilized for BMP

International and other Meng-controlled companies.  Accordingly, they contained essentially the same information.

34.     Thus, BMP International (a) placed orders with T.T. for Assured Comfort; and (b) paid for the refrigerants and related products that T.T. shipped to Assured from one of the same accounts from which BMP International made payments for goods it received from T.T.

35.     During the period from July 2017 to May 2018, the orders T.T. received for refrigerants and related products: (a) decreased significantly from BMP International; and (b) increased significantly from BMP USA.  Thus, while Meng continued to place the orders for these goods, he increasingly directed T.T. to ship to and invoice BMP USA rather than BMP International.

36.     During the period from July 2017 to May 2018, Meng continued to direct some invoices to affiliate entities including: (a) R-Lines, and (b) Coolmaster USA, Inc.—another Meng-controlled entity.   During this period, T.T. understood—based upon Meng's representations among other things—that BMP USA and or BMP International would ultimately take responsibility for payment.

37.     Meng introduced Coolmaster USA as a related company to BMP USA and sought to have T.T. enter a relationship with Coolmaster USA as part of its continued relationship with BMP USA and BMP International.

38.     The invoices and shipping documents that T.T. sent to Coolmaster USA for these goods were identical or substantially similar in form to those that T.T. utilized for BMP USA and other Meng-controlled companies.  Accordingly, they contained essentially the same information.

39.     During 2018, Meng also directed T.T. to make shipments directly to customers and or suppliers of his companies including: (a) Materiales Electricos de Const. y Refrig., S.A.; (b) Lenz Sales & Distribution, Inc.; and (c) Puremann, Inc.  T.T. understood—based upon Meng's representations among other things—that if the customer and or supplier invoiced did not pay for the refrigerant gases and related products, BMP USA or BMP International would bear ultimate responsibility for the payment.

40.     At Meng's request, in or about June 2018, T.T. began shipping refrigerants and related products to Defendant iGas USA, another company controlled, in whole or in part by Meng.

41.     T.T.'s invoice and shipping documents to iGas USA were identical or substantially similar in form to those that T.T. utilized for BMP International and other Meng-controlled companies.  Accordingly, they contained essentially the same information.

42.     During July 2018, T.T. received orders for refrigerants and related products from Defendant iGas USA, but not from BMP International, BMP USA, or any of their affiliates.

43.     At all relevant times, the following companies were controlled, directly or indirectly and in whole or in part, by Meng:

        a.  BMP International, Inc.;

        b.  BMP USA, Inc.;

        c.  LM Supply, Inc.;

        d.  R Lines;

        e.  Assured Comfort AC;

      f.   iGas USA, Inc.; and

      g.   Coolmaster USA, Inc.

44.    From approximately February 2012 until approximately July 2018, T.T. maintained a business relationship with one or more of the Defendants.  During that time, T.T. received orders from Meng or someone under his direction, who would inform T.T. of (a) the products and quantities requested, and (b) to which of the Defendants, affiliated companies, customers, or suppliers of a Defendant the order should be shipped.

45.    During this time period, T.T. maintained a custom and practice of consistently sending invoices and attendant shipping documents for the refrigerants and related products ordered by the Defendants, or by or for LM Supply, R Lines, Assured Comfort AC, or Coolmaster USA (collectively, the "affiliates"), which specified the type and quantity of goods, number and kind of packages, related shipping details, and terms of payment.

46.    From approximately August 2012 to approximately November 2018, the Defendants continued to make payments on account for amounts owed to T.T. for goods it supplied to them.

47.    When T.T. received a payment from the Defendants, it generally credited that payment to the oldest outstanding invoice or invoices.  If, however, there was a newer invoice closer in amount to the payment received, T.T. would, at times, credit the payment to the invoice closer in amount due to the payment rather than to the oldest invoice.

48.    Thus, in its normal business operations, T.T. generally employed a balance forward system of accounting.

49.     However, the Defendants have not made any payments to T.T. since approximately November of 2018.

50.     In or about late July 2018, Meng, acting in his capacity as a representative of each of the Defendants, met with representatives of T.T. in Shanghai, China.  During that meeting, Meng stated that the Defendants no longer wished to purchase refrigerants and related products from T.T.

51.     Consequently, T.T. demanded that the Defendants pay all of the amounts due T.T. for goods it supplied to the Defendants and their affiliates.

52.     Moreover, T.T. provided Meng and, therefore, the Defendants, with a USB drive containing a statement of outstanding invoices rendered by T.T. to the Defendants.

53.     Thereafter, the Defendants did not dispute the amounts that T.T. had detailed that each Defendant owed.  Moreover, Defendants continued to make payments to T.T. until approximately November 2018.

54.     Throughout the period from approximately November 2018, until near the time this Complaint was filed, T.T. made repeated demands via email, telephone, and other messaging forms to Meng and the Defendants that the Defendants pay for the goods they received.

55.     In or about May 2019, a T.T. representative traveled from Dailan, China to Tampa, Florida, met with Meng, and demanded payment from the Defendants.

56.     Despite these repeated demands, the Defendants have made no payments since approximately November 2018, and have never disputed the amounts owed.

57.     Neither the Defendants, or any of their affiliates, have ever returned any of T.T.'s shipments as defective, deficient, or otherwise.  On the contrary, the Defendants and their affiliates retained the refrigerants and related products that they received from T.T.

58.     Moreover, on information and belief, the Defendants, either directly or through one or more of their affiliates, resold all or, at a minimum, a significant amount of the goods they received from T.T.  Nevertheless, the Defendants failed to pay T.T. in excess of $70 million that remains outstanding for refrigerants and related products.

59.     T.T. has engaged Dentons US LLP and Greenberg Traurig, P.A. to represent it in this action and is obligated to pay counsel reasonable fees for their services.

60.     All conditions precedent to the commencement of this action and the granting of the relief requested have occurred, have been satisfied, or have been waived.

**COUNT I - Breach Of Contract By BMP International**

61.     T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

62.     T.T. made offers to enter into contracts with Defendant BMP International by transmitting invoices ahead of the transfer of goods that contained a description of the kind and quantity of the goods, the price of those goods, and attendant payments terms.  Complete, accurate, and authentic copies of each invoice are included in composite **Exhibit A**.

63.     T.T. rendered the BMP International Invoices between approximately June and August 2017.

64.     The BMP International Invoices require this Defendant to pay T.T. the amounts set forth on them—which totals in excess of $14 million in principal—for the refrigerants and related products BMP International received from T.T.

65.     All of the BMP International Invoices included the payment term "O/A 60 days from B/L date".

66.     As to each invoice, BMP International accepted T.T.'s offer by, among other things, accepting and retaining the refrigerants and related products that this Defendant received from T.T.

67.     T.T. shipped all of the goods in the quantity and kind specified by the BMP International Invoices.

68.     BMP International breached these contracts by failing to pay the total amounts due under the BMP International Invoices within the time specified by the payment term on each invoice.

69.     As a direct result of Defendant BMP International's breach of the contracts, T.T. has suffered damages.

WHEREFORE, T.T. demands judgment against BMP International for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT II - Breach of Contract by BMP USA

70.     T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

71.     T.T. made offers to enter into contracts with Defendant BMP USA by transmitting invoices ahead of the transfer of goods that contained a description of the kind and quantity of the goods, the price of those goods, and attendant payments terms.  Complete, accurate, and authentic copies of each invoice are included in composite **Exhibit B**.

72.    T.T. rendered the BMP USA Invoices between approximately July 2017 and May 2018.

73.    The BMP USA Invoices require this Defendant to pay T.T. the amounts set forth on them—which totals in excess of $58 million in principal—for the refrigerants and related products BMP USA received from T.T.

74.    All of the BMP USA Invoices included the payment term "O/A 60 days from B/L date".

75.    As to each invoice, BMP USA accepted T.T.'s offer by, among other things, accepting and retaining the refrigerants and related products that this Defendant received from T.T.

76.    T.T. shipped all of the goods in the quantity and kind specified by the BMP USA Invoices.

77.    BMP USA breached these contracts by failing to pay the total amounts due under the BMP USA Invoices within the time specified by the payment term on each invoice.

78.    As a direct result of Defendant BMP USA's breach of the contracts, T.T. has suffered damages.

WHEREFORE, T.T. demands judgment against BMP USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

## COUNT III - Breach of Contract by iGas USA

79.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

80.    T.T. made offers to enter into contracts with Defendant iGas USA by transmitting invoices ahead of the transfer of goods that contained a description of the kind and quantity of the goods, the price of those goods, and attendant payments terms.  Complete, accurate, and authentic copies of each invoice are included in composite **Exhibit C**.

81.    T.T. rendered the iGas USA Invoices in or around July 2018.

82.    The iGas USA Invoices require this Defendant to pay T.T. the amounts set forth on them—which totals in excess of $1 million in principal—for the refrigerants and related products iGas USA received from T.T.

83.    All of the iGas USA Invoices included the payment term "O/A 60 days from B/L date".

84.    As to each invoice, iGas USA accepted T.T.'s offer by, among other things, accepting and retaining the refrigerants and related products that this Defendant received from T.T.

85.    T.T. shipped all of the goods in the quantity and kind specified by the iGas USA Invoices.

86.    iGas USA breached these contracts by failing to pay the total amounts due under the iGas USA Invoices within the time specified by the payment term on each invoice.

87.    As a direct result of Defendant iGas USA's breach of the contracts, T.T. has suffered damages.

WHEREFORE, T.T. demands judgment against iGas USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

## COUNT IV - Unjust Enrichment by BMP International

88.     T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

89.     From approximately June to approximately August 2017, T.T. shipped to Defendant BMP International refrigerant gas and related products worth in excess of $14 million with the expectation that BMP International would timely remit payment for the goods it received.

90.     BMP International acknowledged that the goods were sent and accepted the benefit of these refrigerant gas and related products by arranging for them to pass through United States Customs and subsequently taking possession.

91.     BMP International also accepted the benefit of the goods it received from T.T. by, among other things, reselling all or, at a minimum, a significant amount of these refrigerant gas and related products.

92.     BMP International failed to remit any payment to T.T. for the goods this Defendant received during this period.

WHEREFORE, T.T. demands judgment against BMP International for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

## COUNT V - Unjust Enrichment by BMP USA

93.     T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

94.     From approximately August 2017 to approximately October 2018, T.T. shipped refrigerant gas and related products worth in excess of $58 million at the direction of Defendant

BMP USA with the expectation that BMP USA would timely remit payment for the goods it received.

95.     BMP USA acknowledged that the goods were sent and accepted the benefit of these refrigerant gas and related products by arranging for them to pass through United States Customs and subsequently taking possession.

96.     BMP USA also accepted the benefit of the goods it received from T.T. by, among other things, reselling all or, at a minimum, a significant amount of these refrigerant gas and related products.

97.     BMP USA failed to remit any payment to T.T. for the goods this Defendant received during this period.

98.     In addition, BMP USA directed T.T. to ship some refrigerant gas and related products to its customers and or suppliers with the promise that BMP USA would render payment to T.T.

99.     Upon information and belief, BMP USA retained the benefit of these goods by, among other things, accepting and retaining compensation and or product from customers and or suppliers that received goods from T.T.

100.    T.T. received no compensation from BMP USA for the goods BMP USA directed T.T. to ship to its customers and or suppliers.

101.    Furthermore, BMP USA directed T.T. to ship refrigerant gas and related products to its various affiliates with the promise that BMP USA would render payment to T.T.

102.     Upon information and belief, BMP USA retained the benefit of these refrigerant gas and related products by sharing in the proceeds realized by its affiliates from the resale of those goods.

103.     Despite BMP USA's promise to pay for goods received by its affiliates, T.T. has not received any compensation for the goods shipped to BMP USA's affiliates at its direction.

WHEREFORE, T.T. demands judgment against BMP USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT XII - Unjust Enrichment by iGas USA

104.     T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

105.     From approximately July to approximately August 2018, T.T. shipped to Defendant iGas USA refrigerant gas and related products worth in excess of $1 million with the expectation that iGas USA would timely remit payment for the goods it received.

106.     iGas USA acknowledged that the goods were sent and accepted the benefit of these refrigerant gas and related products by arranging for them to pass through United States Customs and subsequently taking possession.

107.     iGas USA also accepted the benefit of the goods it received from T.T. by, among other things, reselling all or, at a minimum, a significant amount of these refrigerant gas and related products.

108.     iGas USA failed to remit any payment to T.T. for the goods this Defendant received during this period.

WHEREFORE, T.T. demands judgment against iGas USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT VII - Account Stated by BMP International

109.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

110.    Before the institution of this action, T.T. and Defendant BMP International had business transactions between them beginning in 2012.

111.    T.T. stated the amounts due to it from BMP International by, among other things, issuing invoices for each transaction.

112.    The invoices issued to BMP International included those invoices from approximately June until approximately August 2017, for which the stated accounts remain unpaid.  Complete, accurate and authentic copies of these invoices are attached as composite **Exhibit A**.

113.    The total value of these business transactions was in excess of $14 million.

114.    In addition, T.T. provided BMP International, through Meng, with a USB drive containing a statement of all amounts due on or about July 30, 2018.

115.    The USB drive contained a statement of BMP International and BMP USA's accounts itemized by invoice number.  Thus, BMP International could engage in simple arithmetic to confirm the total of its unpaid invoices to T.T. according to the stated account.

116.    T.T. continued to demand payments through at least May of 2019.

117.    During the period T.T. demanded payments, BMP International did not dispute the total amounts due.

118.    BMP International implicitly promised to make payment to T.T. on the account by, among other things: (a) retaining the refrigerants and related products that it received from T.T.; (b) reselling these goods to customers; (c) not objecting to the stated amounts due; and (d) continuing to make payments on the account after receiving the stated balances.

119.    Nevertheless, BMP International ceased making payments in or about November 2018, leaving a balance due on the account in excess of $14 million.

WHEREFORE, T.T. demands judgment against BMP International for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT VIII - Account Stated as to BMP USA

120.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

121.    Before the institution of this action, T.T. and Defendant BMP USA had business transactions between them beginning in 2015.

122.    T.T. stated the amounts due to it from BMP USA by, among other things, issuing invoices for each transaction.

123.    The invoices issued to BMP USA included those invoices from approximately July 2017 until approximately May 2018, for which the stated accounts remain unpaid. Complete, accurate and authentic copies of these invoices are attached as composite **Exhibit B**.

124.    The total value of these business transactions was in excess of $58 million.

125.    In addition, T.T. provided BMP USA, through Meng, with a USB drive containing a statement of all amounts due on or about July 30, 2018.

126.   The USB drive contained a statement of BMP USA and BMP International's accounts itemized by invoice number.  Thus, BMP USA could engage in simple arithmetic to confirm the total of its unpaid invoices to T.T. according to the stated account.

127.   T.T. continued to demand payments through at least May of 2019.

128.   During the period T.T. demanded payments, BMP USA did not dispute the total amounts due.

129.   BMP USA implicitly promised to make payment to T.T. on the account by, among other things: (a) retaining the refrigerants and related products that it received from T.T.; (b) reselling these goods to customers; (c) not objecting to the stated amounts due; and (d) continuing to make payments on the account after receiving the stated balances.

130.   Nevertheless, BMP USA ceased making payments in or about November 2018, leaving a balance due on the account in excess of $58 million.

WHEREFORE, T.T. demands judgment against BMP USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT IX - Account Stated as to iGas

131.   T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

132.   Before the institution of this action, T.T. and Defendant iGas USA had business transactions between them beginning in 2018.

133.   T.T. stated the amounts due to it from iGas USA by, among other things, issuing invoices for each transaction.

134.    The invoices issued to iGas USA included those invoices from in or around July 2018, for which the stated accounts remain unpaid.  Complete, accurate and authentic copies of these invoices are attached as composite **Exhibit C**.

135.    The total value of these business transactions was in excess of $1 million.

136.    In addition, T.T. provided iGas USA, through Meng, with a USB drive containing a statement of all amounts due on or about July 30, 2018.

137.    The USB drive contained a statement of iGas USA's accounts itemized by invoice number.

138.    T.T. continued to demand payments through at least May of 2019.

139.    During the period T.T. demanded payments, iGas USA did not dispute the total amounts due.

140.    iGas USA implicitly promised to make payment to T.T. on the account by, among other things: (a) retaining the refrigerants and related products that it received from T.T.; (b) reselling these goods to customers; and (c) not objecting to the stated amounts due.

141.    Nevertheless, iGas USA did not make payments, leaving a balance due on the account in excess of $1 million.

WHEREFORE, T.T. demands judgment against iGas USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

### COUNT X - Open Account as to BMP International

142.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

143.    From approximately June to approximately August 2017, T.T. sold Defendant BMP International refrigerant gas and related products worth in excess of $14 million.

144.    Throughout T.T.'s business relationship with BMP International, T.T. maintained an account for this Defendant containing charges and payments for all sales transactions between the companies.   T.T. kept Defendants BMP International's and BMP USA's accounts in a ledger and determined the amounts due from each Defendant by itemizing each of their respective invoices.

145.    T.T. generally included the charges invoiced to BMP International's affiliates in the account as it was BMP International's practice to (a) direct T.T. to ship to and or invoice the affiliates and (b) pay T.T. for goods shipped to and or invoiced to the affiliates.

146.    Until approximately November 2018, BMP International made payments on its account, which T.T. duly recorded.

147.    Since approximately November 2018, BMP International has not made a payment on its account with T.T.

148.    Through simple analysis of the itemized invoice numbers in the account, T.T. could identify the transactions for which BMP International was responsible.

149.    A complete, accurate, and authentic copy of BMP International's itemized account with T.T. is attached as **Exhibit D**.

150.    As set forth on **Exhibit D**, BMP International owes the principal amount stated in the open account, which is in excess of $14 million, for goods this Defendant received and accepted from T.T.

WHEREFORE, T.T. demands judgment against BMP International for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

## COUNT VIII - Open Account as to BMP USA

151.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

152.    From approximately July 2017 to approximately May 2018, T.T. sold Defendant BMP USA refrigerant gas and related products worth in excess of $58 million.

153.    Throughout T.T.'s business relationship with BMP USA, T.T. maintained an account for this Defendant containing charges and payments for all sales transactions between the companies.

154.    T.T. kept Defendants BMP USA's and BMP International's accounts in a ledger and determined the amounts due from each Defendant by itemizing each of their respective invoices.

155.    T.T. generally included the charges invoiced to BMP USA's affiliates in the account as it was BMP USA's practice to (a) direct T.T. to ship to and or invoice the affiliates and (b) pay T.T. for goods shipped to and or invoiced to the affiliates.

156.    T.T. generally included charges invoiced to BMP USA's customers and or suppliers in the account when BMP USA directed T.T. to ship refrigerant gas and related products to those customers and or suppliers with the promise that BMP USA would pay T.T. for the goods.

157.    Until approximately November 2018, BMP USA made payments on its account, which T.T. duly recorded.

158.    Since approximately November 2018, BMP USA has not made a payment on its account with T.T.

159.    Through simple analysis of the itemized invoice numbers in the account, T.T. could identify the transactions for which BMP USA was responsible.

160.    A complete, accurate, and authentic copy of BMP USA's itemized account with T.T. is attached as **Exhibit D**.

161.    As set forth on **Exhibit D**, BMP USA owes the principal amount stated in the open account, which is in excess of $58 million, for goods this Defendant received and accepted from T.T.

WHEREFORE, T.T. demands judgment against BMP USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

## COUNT XII - Open Account as to iGas USA

162.    T.T. incorporates the allegations set forth in paragraphs 1 through 60, above.

163.    From approximately June to approximately July 2018, T.T. sold Defendant iGas USA refrigerant gas and related products worth in excess of $1 million.

164.    Throughout T.T.'s business relationship with iGas USA, T.T. maintained an account for this Defendant containing charges and payments for all sales transactions between the companies.

165.    T.T. kept Defendant iGas USA's accounts in a ledger itemized by each of its invoices.

166.     Until approximately October 2018, iGas USA made payments on its account, which T.T. duly recorded.

167.     Since approximately October 2018, iGas USA has not made a payment on its account with T.T.

168.     A complete, accurate, and authentic copy of iGas USA's itemized account with T.T. is attached as **Exhibit E**.

169.     As set forth on **Exhibit E**, iGas USA owes the principal amount stated in the open account, which is in excess of $1 million, for goods this Defendant received and accepted from T.T.

WHEREFORE, T.T. demands judgment against iGas USA for damages, prejudgment and post-judgment interest, and such further relief as is appropriate to protect T.T.'s rights and interests.

[Attorney's Signature Appears on Following Page]

Dated:  August 16, 2018

Respectfully submitted,

*/s/ David B. Weinstein*
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Ryan T. Hopper (FBN 0107347)
hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 East Kennedy Blvd., Suite 1900
Tampa, Florida 33602
(813) 318-5700 - telephone
(813) 318-5900 - facsimile

*and*

Mark G. Trigg
*Application for Special Admission will be submitted*
Roy Xiao
*Application for Special Admission will be submitted*
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
(404) 527-4000 - telephone
(404) 527-4198 - facsimile
mark.trigg@dentons.com
roy.xiao@dentons.com