## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| T.T. INTERNATIONAL CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> BMP INTERNATIONAL, INC., <br> BMP USA, INC. IGAS USA, INC., <br><br> Defendants. | No. 8:19-cv-02044 |

## T.T.'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff T.T. International Co., Ltd. files this Response in Opposition to Defendants' BMP International Inc. and BMP USA Inc. Motion for Protective Order and Incorporated Memorandum of Law ("Motion") (Doc. 86). For the reasons set forth below, this Court should enter an order (a) denying Defendants' Motion, and (b) requiring Ben Meng and Defendants' corporate representative to promptly attend their depositions.

**I.   SUMMARY**

Defendants cannot demonstrate good cause to postpone the depositions of Meng and their corporate representative until "late August 2021," which is more than (a) one month after the current discovery deadline, and (b) approximately three weeks after the current dispositive motion deadline. It is undisputed that Meng voluntarily traveled to China during the height of the COVID-19 pandemic, while this case was

pending, and certainly with knowledge of the significant travel restrictions. Significantly, Defendants have conceded in their Motion that they did not even ask Meng about his ability to travel outside of China for a remote deposition until *after the Deposition Notices were served* by T.T. (Doc. 86, p. 4). This Court therefore should not reward Meng or Defendants by forcing T.T. to wait until it is purportedly convenient for Meng and Defendants' corporate representative to attend their depositions. Among other things, no one can be certain about what will occur in the future with respect to COVID-19 or when.

Regardless of Meng's and Defendants' voluntary actions and delay, however, the Court should deny the Motion because the Defendants cannot demonstrate good cause necessary for a protective order.

Defendants rely on unidentified "business activities" and Meng's desire to develop unspecified "business relationships" to demonstrate good cause. But Defendants have failed to proffer any evidence concerning these alleged "business activities" or "business relationships" that demonstrate what burden Meng would purportedly suffer if he was required to leave China one month earlier than his intended departure. Defendants' failure to support their stereotyped and conclusory statements with evidence supporting the need for a protective order is fatal to their Motion.

Moreover, T.T. would be severely prejudiced by an order prohibiting the depositions of Meng and Defendants' corporate representative until late August

because it would force T.T. to file dispositive motions without the benefit of these depositions.

Therefore, as discussed in more detail below, the Court should deny Defendants' Motion in its entirety and compel Defendants to promptly produce Meng and their corporate representative for depositions.

## II.   RELEVANT BACKGROUND

### A.   T.T.'s Complaint.

T.T. initiated this action on August 16, 2019, by filing a twelve-count Complaint asserting separate causes of action against each Defendant for breach of contract, unjust enrichment, account stated, and open account. (Doc. 1). T.T.'s claims arise from its shipment and the Defendants' acceptance of (a) over $14 million of refrigerants, disposable cylinders, and related products to Defendant BMP International; and (b) over $58 million of refrigerants, disposable cylinders, and related products to Defendant BMP USA. (Doc. 1 at ¶ 1). Defendants received, retained, and in all or some instances, resold these goods. However, they have refused and failed to pay T.T. for any of these products. Consequently, T.T has suffered damages in excess of $70 million.

Defendants are Florida corporations with their principal place of business, employees, books, and records located in Tampa, Florida. Each of the Defendants is owned, in whole or in part and directly or indirectly, by Meng. Meng controlled all aspects of Defendants' business relationship with T.T. by himself, including solely maintaining all of Defendants' corresponding business records (e.g., payment records,

purchase orders, invoices). *See* pp. 76-77 of the deposition transcript of Wendy Wang, taken on April 29, 2021, and attached as **Exhibit 1**.

### B. Meng Voluntarily Travels To China At The Height Of The Pandemic And With Defendants' Knowledge Of Travel Restrictions.

On August 7, 2020, T.T. filed a Motion to Extend requesting that this Court extend the remaining deadlines in its initial Amended Scheduling Order by approximately four months ("August Motion"). (Doc. 61).

Among other things, T.T. advised the Court that the situation involving the COVID-19 pandemic presented an extraordinary circumstance and good cause for extending the remaining deadlines because T.T.'s representatives and witnesses—who are all willing witnesses residing in China—were barred from traveling to the United States to attend a deposition, hearing, or trial. (*Id*.). T.T. also advised the Court that remote video attendance at a deposition or trial by witnesses residing in China was impossible because China prohibits attorneys to take depositions in China for use in foreign courts and participation in such activity could result in arrest or detention. (*Id*.).

Because of these restrictions, the Chinese Regions of Hong Kong and Macau are often used for video or in-person depositions of willing witnesses residing in China. At the time of the August Motion, however, T.T.'s representatives and the Parties' witnesses were barred from (a) traveling to these Regions, or (b) returning to their Province of residence in China, even assuming they could legally travel to Hong Kong or Macau. (*Id*. at 4).

The Court granted the August Motion and entered its Second Amended Scheduling Order on August 1, 2020. (Doc. 63). On August 18, 2020, the Court entered a Second Amended Scheduling Order, which set (a) the close of discovery for July 2, 2021; (b) a dispositive motion deadline for August 6, 2021; and (c) a trial term to begin on January 3, 2022. (Doc. 63).

Notwithstanding the significant travel and deposition barriers discussed in the August Motion, Meng voluntarily left the United States for China. (Doc. 86, p. 4). While the exact date of Meng's move is unclear, Defendants concede in their Motion that he has "been in China for **many months** . . . ." (*Id.*) (emphasis added). Accordingly, Meng voluntarily went to China (a) at the height of the COVID-19 pandemic; (b) while this case was pending; and (c) likely with knowledge that his deposition could not occur in China.

### C. Defendants Fail To Provide T.T. With Dates For The Depositions Of Meng And Their Corporate Representative.

Through an email dated May 6, 2021, T.T.'s counsel requested dates for the depositions of Meng and Defendants' corporate representative. A copy of T.T.'s May 6 email is attached as **Exhibit 2**. Defendants' counsel failed to respond.

On May 11, T.T. made a *second* request. A copy of T.T.'s May 11 email is attached as **Exhibit 3**. The next day, Defendants' counsel requested a call for May 14 to discuss, among other things, the depositions and Defendants' desire to extend the remaining case deadlines by 30 days. T.T.'s counsel was unavailable on May 14, but offered to schedule a telephone conference for May 13 or 18.

Instead of providing availability for a call, Defendants' stated that they would correspond via email and were working to obtain deposition dates. Defendants, however, never sent an email or otherwise provided dates prior to May 18. Consequently, on May 18, T.T. sent Defendants a *third* request. A copy of T.T.'s May 18 request is attached as **Exhibit 4**. Defendants' counsel responded that same day stating, among other things, that (a) Meng was available for his deposition on June 9 and 11, but did not disclose specifically where Meng would be located; (b) Defendants intended to seek a 30-day extension of the discovery deadline; and (c) a conference call concerning Meng's deposition and the requested extension would be beneficial. *Id*.

On May 21, counsel for T.T. and Defendants held a phone conference to discuss the depositions. During that conference, T.T. reminded Defendants that depositions of willing witnesses residing in China could not lawfully occur in China. Accordingly, T.T.'s counsel suggested an alternative procedure pursuant to which (a) individuals located in China would travel to Hong Kong or Macau, which would serve as the location for a remote video deposition; (b) each deposition would (i) begin at 7 p.m. EST, and (ii) last up to two 3 ½ hour sessions, if necessary; and (c) the Parties' counsel, court reporter, translator, and videographer would participate from the same location in Tampa, Florida.

While Defendants generally agreed to this procedure, the Parties decided to further explore whether China's prohibition of depositions for use in foreign litigation applied to U.S. Citizens residing in China—such as Meng. T.T.'s counsel agreed to assist Defendants with this inquiry. Following T.T.'s counsel's consultation with

colleagues in Greenberg Traurig's Shanghai office, it was determined that Meng cannot be deposed in China.

Counsel for T.T. and Defendants held a second phone conference on May 28 during which T.T.'s counsel (a) informed Defendants that it was necessary for Meng to travel outside of China for his deposition; and (b) requested—for the *fourth* time—that Defendants provide potential deposition dates as soon as possible. Defendants, however, did not provide dates following the May 28 call or in response to T.T.'s *fifth* and *sixth* requests that were made on June 3 and 4, respectively. Copies of T.T. 's June 3 and 4 emails are attached as **Composite Exhibit 5**.

### D. Given The Impending Discovery Cutoff And Defendants' Failure To Provide Dates, T.T. Serves Notices Of Depositions.

As of June 7, (a) discovery closed on July 2; and (b) Defendants did not provide any potential dates for the depositions of Meng or their corporate representative.

Therefore, on June 7, T.T. served Notices of Taking the Video Deposition[s] of Meng, as President of Defendants, and Defendants' Corporate Representative to occur on June 17 and 21, respectively (the "Notices"). (Docs. 86-1, 86-2, 86-3, 86-4). The Notices were served at 10:30 a.m. on June 7. A copy of T.T.'s June 7 service email is attached as **Exhibit 6**.

Twenty minutes *after* T.T. served its Notices, Defendants filed an Unopposed Motion to Extend Discovery Deadline ("Extension Motion") for fifteen days—i.e., until July 17—to complete depositions. (Doc. 84). Notably, Defendants did not state in their Extension Motion that Meng (a) could not return to China after traveling to

Macau or Hong Kong; and (b) did not intend to return to the United States until late August 2021—more than one month after the requested extension period. That is likely because, as Defendants concede in their Motion, they failed to inquire about Meng's ability to attend a remote deposition in Macau or Hong Kong until *after* T.T. served its Notices. (Doc. 86, p. 4). Apparently, sometime after the Notices were served, Meng informed Defendants that he (a) could not return to China after a deposition in Macau or Hong Kong; and (b) did not intend to return to the United States until "late August 2021."

On June 10, counsel for T.T. and Defendants held a phone conference to discuss the Notices. During the conference, Defendants informed T.T. for the first time that Meng ***refused*** to travel outside of China until "late August 2021" and, as a result, Defendants would not produce Meng, or a corporate representative as required by the Notices. The next day, Defendants filed their Motion.[1]

## III.   LEGAL STANDARD

"The 'Federal Rules of Civil Procedure strongly favor full discovery whenever possible.'" *Beckel v. Fagron Holding USA, LLC*, No. 8:16-cv-2059-T-23AAS, 2019 WL 414864, *2 (M.D. Fla. Feb. 1, 2019) (quoting *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). To obtain a protective order, a moving party must

---

[1] As a result of this Court's June 14 Notice of Hearing on the Motion, (Doc. 87), T.T. postponed the depositions of Meng and Defendants' corporate representative pending that hearing.

show that "good cause" exists to protect it from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).

"The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)). "To make a showing of good cause, the movant has the burden of showing the injury 'with specificity.' In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection . . . the alleged harm must be significant, not a mere trifle." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (internal citations omitted).[2]

"In addition to requiring good cause, the district court must 'balance the interests of those requesting the order.'" *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (quoting *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.3d 89, 91 (11th Cir. 1989)). "[T]he federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule." *Farnsworth*, 758 F.2d at 1547.

---

[2] Defendants claim that the four factors identified in *Kliener v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985) serve as the criteria for evaluating the existence of good cause in the context of a motion for protective order. (Doc. 86, p. 5). Respectfully, Defendants are wrong. The *Kliener* court identified four factors courts should use to evaluate the existence of good cause to support an order limiting communications between a class and class opponents. 751 F.2d at 1206. That matter did not involve a good cause determination in the context of the facts at issue here.

"This requires the court to balance Plaintiff's interest in obtaining the discovery against Defendants' interest in not having to provide the discovery." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 2016 U.S. Dist. LEXIS 192458, *10 (M.D. Fla. Dec. 5, 2016). Thus, here, the Defendants must show that they will incur a burden that outweighs T.T.'s interest in deposing Meng and Defendants' corporate representative. *See generally, Farnsworth*, 758 F.2d at 1547. Ultimately, the decision to enter a protective order is within the sound discretion of the court. *See Am. Auto Ins. Co.*, 2016 U.S. Dist. LEXIS 192458 at *9.

IV.   **ARGUMENT**

   A.   **Defendants Offer No Evidence To Support Their Stereotyped and Conclusory Statements Supporting The Need For A Protective Order.**

"When seeking a protective order under Fed. R. Civ. P. 26(c), the burden of proof is on the party seeking the order." *Arval Service Lease S.A. v. Clifton*, No. 3:14-cv-1047-J-39MCR, 2015 WL 12818837, *2 (M.D. Fla. June 23, 2015). "Only undue burden or expense' provides a potential basis for relief from legitimate discovery demands" and "'[u]ndue burden requires parties to show more than expense or difficulty.'" *Id*. (quoting *Thiessen v. U.S. Forest Serv.*, 2011 U.S. Dist. LEXIS 59943, *5 (E.D. Cal. June 6, 2011). Courts therefore require that "[a] 'party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved.'" *Id*. (quoting *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, *5 (D. Kan. June 3, 2008)); *see also Trinos*, 250 F.R.D. at 698

(stating that "courts should only limit discovery 'based on *evidence* of the burden involved, not a mere recitation that the discovery request is unduly burdensome.'").

Here, Defendants claim that a protective order precluding the depositions of Meng and their corporate representative, until "late August 2021" is necessary because "once [Meng] leaves mainland China he would not be let back [in]" and, as a result, he will be (a) displaced from his residence in Shanghai; (b) unable to "continu[e] to develop his business relationships in China;" and (c) unable to facilitate his family's travel back to the United States. *See* Doc. 86, p. 4. Tellingly, however, Defendants offer ***no evidence whatsoever*** substantiating these statements or to otherwise demonstrate good cause for the issuance of a protective order.

Among other things, Defendants fail to support their Motion with a cogent explanation, let alone any evidence establishing (a) why Meng cannot return to China after traveling to Macau or Hong Kong; (b) how long Meng will be prohibited from returning to China; (c) what specific "business" Meng needs to conduct in China prior to his intended departure; (d) what specific "disruption" will be caused to Meng's business activities if he is required to leave China; or (e) why Meng voluntarily traveled to China in the midst of a deadly pandemic. Additionally, Defendants offer no explanation addressing why (a) Meng's presence in China is necessary to conduct "business"—as opposed to working remotely from the United States or China's Regions of Macau or Hong Kong; and (b) Meng's family cannot leave China with him. Defendants' bald and conclusory allegations are insufficient.

Courts routinely deny motions for protective orders where, as here, a moving party fails to support its request for a protective order with evidence supporting conclusory statements concerning an alleged undue burden. *See e.g.*, *Adamson-James v. Fla. Dep't of Corr.*, No. 6:11-cv-628-Orl-35TBS, 2013 WL 1703541, *2 (M.D. Fla. Mar. 22, 2013) (denying plaintiff's motion for protective order because "[p]laintiff's allegations are based entirely upon hearsay and speculation . . . ."); *Gritt v. Target Corp.*, 8:07-CV-181-T-27EAJ, 2007 WL 3011095, *4 (M.D. Fla. Oct. 12, 2007) (denying Target's motion for protective order precluding the production of a training DVD on the basis that it is a trade secret because "[b]eyond Target's broad assertions, it offers no specific evidence of the proprietary nature of the DVD, and its motion for protective order is not supported by an affidavit to facts that establish the DVD" is entitled to protection); *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 608-09 (N.D. Fla. 2019) ("[A]ny litigant who seeks a protective order to preclude a deposition in a particular place, must ***establish with evidence*** an inability to attend a deposition at that place.") (original emphasis).

The decision in *Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV-ZLOCH/ROSENBAUM, 2011 WL 13185989 (S.D. Fla. Sept. 13, 2011) is instructive. There, defendants moved for a protective order relieving the individual defendant from attending his deposition because, among other things he "is an extremely busy and important CEO who travels frequently" and certain unelaborated "business-related issues [] ma[de] him unavailable to attend his deposition . . ." *Id*. at *1. The court rejected defendant's argument because, as here, "[d]efendants have not identified any

'business-related issues' that ostensibly prevent [defendant] from attending his deposition." *Id*. at *3. Specifically, the court took issue with defendants' failure to "point to [any] business-related plans or other business-related circumstances that make [defendant] unavailable for his deposition." *Id*.

Similarly, Defendants do not provide any specific "business activities" supported by evidence demonstrating, among other things, the specifics of these "business activities" and "business relationships," how these alleged activities and relationships would be impacted if Meng left China one month before his intended departure, or why Meng cannot continue to cultivate these relationships remotely in the United States or in China's Regions.

Defendants' failure to support their stereotyped and conclusory statements with evidence demonstrating the need for a protective order is fatal to their Motion. Because the Defendants have failed to show good cause, the Motion must be denied.

**B.     Defendants Created Their Alleged Burdens.**

Defendants created the alleged burden about which they now complain and therefore this Court should not reward Defendants by granting the Motion.

It is undisputed that Meng voluntarily traveled to China at the height of the pandemic. (Doc. 86, p. 4) ("Meng, his wife, and two minor children have been in China for many months . . . ."). Additionally, it cannot be reasonably disputed that Meng had knowledge of the significant barriers and government restrictions on travel to and from China, as well as China's prohibition on foreign depositions. While Defendants attempt to minimize Meng's knowledge by asserting that he "went to

China without knowledge that depositions . . . would be difficult to undertake and did not anticipate that travel to and from China would be an issue in this case," a cursory review of the Parties' papers filed in this case rebut Defendants' contention.

First, on April 8, 2020, the Parties filed a Joint Motion to Extend Certain Scheduling Order Deadlines ("Joint Extension Motion"). (Doc. 43). In the Joint Extension Motion, the Parties advised this Court of, among other things, the significant impact that the COVID-19 virus had on both domestic and international activities and travel, including China's closure of its borders to foreigners and the ban of non-U.S. citizens entering the United States. (Doc. 43, pp. 2-3).

Additionally, T.T. advised this Court in its August Motion that T.T.'s representatives and witnesses residing in China were still barred from traveling to the United States and China's borders remained closed to U.S. citizens. (Doc. 61). Notably, T.T. also advised the Court and Defendants that (a) depositions in China for use in foreign courts is prohibited without the Chinese government's approval; (b) approval from the Chinese government to take a deposition in China is typically denied or simply ignored; (c) because of these restrictions, Hong Kong and Macau are often used as the location for depositions of willing witnesses residing in China; and (d) it is T.T.'s understanding that depositions in China's Regions is presently "unavailable because T.T.'s representatives and the Parties' witnesses are presently barred" from traveling to these Regions or returning to their Province of residence in China. *Id.* at p. 4.

Despite these clear and unmistakable warnings, Meng voluntarily chose to travel to China. And, in doing so, Meng created the situation about which Defendants now complain. This Court therefore should not reward Meng or Defendants by forcing T.T. to wait until it is purportedly convenient for Meng to take his deposition.

Moreover, Defendants could have designated another employee as their corporate representative but, instead, chose to designate Meng, whose alleged personal obligations are now being offered as the reason to avoid his deposition. A Rule 30(b)(6) deponent need not be someone with direct knowledge of the subject matter of the deposition as Defendants can designate any individual to testify on their behalf "to matters known or reasonably available to the organization" and that individual "is required to testify about the knowledge of the corporation as an entity and not his or her own knowledge." *Stelor Productions, Inc. v. Google, Inc.*, 2008 WL 4218107 at *3 (S.D. Fla. Sept. 15, 2008); *see also Coach, Inc. v. Visitors Flea Market, LLC*, 2014 WL 2612036, *2 (M.D. Fla. June 11, 2014) ("A corporate representative . . . need not have personal knowledge of the events giving rise to the action."). Defendants offer no explanation as to why one of their Tampa-based officers, employees, or agents cannot serve as their corporate representative.

Because Defendants situation is a "self-inflicted wound," the Motion should be denied.

### C. Defendants' Burden, If Any, Is Outweighed By The Severe Prejudice That T.T. Will Suffer.

An order prohibiting the depositions of Meng and Defendants' corporate representative until "the end of August 2021" would severely prejudice T.T. because it would force T.T. to file dispositive motions before deposing Meng and Defendants' corporate representative.

Presently, (a) the discovery deadline is July 17; (b) the dispositive motion deadline is August 6; and (c) the trial term is scheduled to begin on January 3, 2022. (Docs. 63, 85). Defendants have not requested that this Court extend any of these deadlines.[3] Instead, Defendants seek an order prohibiting T.T. from taking the depositions of Meng and their corporate representative until *after* the close of discovery and the expiration of the dispositive motion deadline. That is unfair and unreasonable.

Among other things, T.T. will be forced to file dispositive motions *before* deposing Meng—Defendants' most important witness—and Defendants' corporate representative. Meng is the only representative of Defendants that controlled all aspects of the business relationship with T.T., including maintaining of all of Defendants' corresponding business records (e.g., payment records, purchase orders, invoices). *See* **Exhibit 1**. Compared to the unsubstantiated burden presented by Defendants—i.e., requiring Meng to leave China one month earlier than he intended—requiring T.T. to file a dispositive motion without the benefit of Meng's testimony would be severely prejudicial to T.T. and this Court. *See generally United*

---

[3] Defendants also did not request in their Extension Motion—which was filed after the Notices were served—that this Court extend the discovery or dispositive motion deadlines until sometime after Meng planned to return to the United States. (Doc. 84).

*States Vinyl Mfg. Corp. v. Colour & Design, Inc.*, 2013 WL 12409321, *3 (N.D. Ga. Aug. 26, 2013) (rejecting plaintiff's proposed briefing schedule concerning a motion for partial summary judgment because the proposed schedule would lead the court to resolve the motion before the parties could depose plaintiff's employee, who was a key witness).

Defendants attempt to minimize T.T.'s prejudice by claiming that a protective order will not delay these proceedings because the depositions could be taken "45 days after the current discovery deadline" and "[t]rial is set for January 2021 so there is no need for a trial continuance . . . ." (Doc. 86, p. 7). Although unclear, Defendants apparently believe that this Court can extend the discovery and dispositive motion deadlines without continuing the trial. They are wrong. This Court requires that dispositive motions, including *Daubert* motions, must be filed ***at least five months*** before the trial term begins. (Doc. 5, p. 8). Thus, an extension of the dispositive motion deadline would necessarily require a trial continuance, which T.T. strongly opposes. Among other things, this action has been pending for approximately two years and Defendants are clearly attempting to delay its resolution.

### D. Defendants' Authority Is Distinguishable.

The case relied on by Defendants is distinguishable. In *Karakis v. Foreva Jens Inc.*, No. 08-61470-CIV, 2009 WL 113456, (S.D. Fla. Jan. 19, 2009), the plaintiff served defendants' counsel with eight notices of depositions without first consulting defendants' counsel. *Id.* at *1. When none of the eight deponents appeared for deposition, and instead of attempting to reset the deposition for a mutually convenient

date, plaintiff filed a motion for sanctions and to compel. *Id*. Among other things, the court determined that plaintiff's counsel's routine practice of unilaterally scheduling depositions—without any good faith effort to obtain mutually convenient dates—was concerning and ordered plaintiff's counsel to not unilaterally set any further depositions without leave of court. *Id*. at *6.

Conversely, here, T.T. engaged in good faith efforts to obtain mutually convenient dates for the depositions of Meng and Defendants' corporate representative. Those efforts, however, were unsuccessful as Defendants failed to offer T.T. any dates. That is likely because, as Defendants concede in their Motion, their counsel failed to contact Meng to determine whether he could travel to Macau or Hong Kong for a remote video deposition until "[a]fter [the] deposition notices were issued." (Doc. 86, p. 4). Accordingly, *Karakis* has no application to the merits of Defendants' Motion.

## CONCLUSION

For the reasons set forth above, the Court should enter an order (a) denying Defendants' Motion; and (b) requiring Ben Meng and Defendants' Corporate Representatives to promptly attend their depositions.

Dated:  June 25, 2021                           Respectfully submitted,

/s/ David B. Weinstein
David B. Weinstein – FBN 604410
E-mail:  wesinsteind@gtlaw.com
Joseph H. Picone – FBN 118381
E-mail:  piconej@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, FL  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Attorneys for T.T. International Co., LTD*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David B. Weinstein
Attorney