## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD,

    Plaintiff,

v.                                        Case No: 8:19-cv-2044-CEH-AEP

BMP INTERNATIONAL, INC. and
BMP USA, INC.,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Plaintiff T.T. International's Motion to Exclude the Testimony of Defendants' Expert, Mr. Dong "Daly" Hu (Doc. 101). In the motion, Plaintiff seeks an order excluding the opinions and testimony of Defendants' expert witness on the basis that he is unqualified and his opinions unsupported. Defendants filed a response in opposition (Doc. 112) and a supplemental report (Doc. 112-1). Plaintiff subsequently filed a Motion to Strike the Supplemental Report (Doc. 117). Defendants did not respond to the motion to strike, and thus the motion is deemed unopposed. *See* M.D. Fla. 3.01(c). The Court, having considered the motions and being fully advised in the premises, will deny Plaintiff T.T. International's Motion to Exclude the Testimony of Defendants' Expert, Mr. Dong "Daly" Hu and grant the motion to strike supplemental report.

I. **BACKGROUND**

In this commercial transactions dispute, Plaintiff T.T. International Co., Ltd. ("Plaintiff"), sues Defendants, BMP International, Inc. and BMP USA (collectively "Defendants"), to recover in excess of 70 million dollars for refrigerant gas and related products exported by Plaintiff from China to Defendants in the United States, which the Defendants retained but did not pay for. Plaintiff submits the Commercial Invoices identified the products shipped and stated the terms of payment, including the unit price, which is what Plaintiff contends Defendants owe Plaintiff. Defendants do not dispute that they agreed to pay for the products and that they received the products and kept or resold them. However, Defendants dispute the amount they owe Plaintiff for the products. Plaintiff sues Defendants for breach of contract, unjust enrichment, account stated, and open account. Doc. 1.

In opposition to Plaintiff's unjust enrichment claims, Defendants submit the expert report of Dong "Daly" Hu ("Mr. Hu") to opine as to the value of the products at issue in this litigation. Doc. 99-14. Mr. Hu is an attorney licensed in China and is a senior partner and member of the management committee for the largest law firm in Ningbo, China, Harnest & Garner. *Id.* at 4. He has consulted and provided legal advice regarding broker rates for a variety of products and services in China with regularity. *Id.* He has provided expert and consulting services for many large enterprises related to the import market on a variety of platforms. *Id.* at 3. For 15 years, Mr. Hu has worked as an attorney providing legal services related to commercial transactions for companies in China and worldwide. *Id.*

2

Mr. Hu was retained as an expert by Defendants to opine as to the nature and extent of the rates that the brokers in China received in the industry for products like those being brokered by Plaintiff here. *Id.* In analyzing and determining what rate a commodities broker in China, and specifically Dalian China, would charge for its services, Mr. Hu considered his own experience negotiating and drafting brokerage contracts, his experience providing legal counsel reviewing a substantial number of international trade transactions for a variety of commodities, conversations with the principals of BMP regarding the parties' working relationship, and public information about the broker market in China. *Id.* at 4–5.

In his report, Mr. Hu identifies three common forms of compensation for a broker to charge for securing resources and being a middleman to factories and buyers: (1) flat rate commission; (2) blind mark-up; and (3) factory commission. He states that the most common method of compensation for brokers in China is the flat rate commission. Based on his experience dealing with these types of transactions, he opines that the general rate would be a 1% to 5% rate of commission or mark up over the factory cost. *Id.* at 7. Citing to figures from the National Bureau of Statistics, Mr. Hu opines that brokers in China in the same industry as Plaintiff during the 2015 through 2018 time frame charged rates between 3.93% to 5.66% over factory cost. *Id.* Taking into consideration the exclusive broker arrangement that Defendants had with Plaintiff, Mr. Hu states that a rate between 2% to 3% over factory cost would be appropriate in the circumstances. *Id.* at 7–8. Mr. Hu attaches to his report his

curriculum vitae, documents and information he relied upon, and a statement of his compensation. *Id.* at 9–19.

Plaintiff moves to exclude the opinions of Mr. Hu, arguing he is not experienced in the highly regulated refrigerant industry, he has not adequately explained how he reached his conclusions, and his testimony is unhelpful to the trier of fact. Doc. 101. Defendants respond in opposition arguing that Plaintiff's arguments go to the weight, not the admissibility, of Mr. Hu's opinions. Doc. 112. Defendants further argue that Mr. Hu's report satisfies the requirements of Rule 26, and if Plaintiff wanted to learn more, it had the opportunity to depose Mr. Hu, but it chose not to. Defendants proffer a supplemental report which provides additional information regarding Mr. Hu's experience and the analysis he undertook. *See* Doc. 112-1. Plaintiff moves to strike the supplemental report as untimely. Doc. 117. On September 17, 2021, Defendant sought a seven-day extension of time to respond to the motion to strike, which the Court permitted. Docs. 121, 123. Thus, Defendants' response to the motion was due by September 24, 2021. To date, Defendants have not filed a response to the motion to strike.

## II.   LEGAL STANDARD

### A.   *Daubert* Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is a codification of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The Supreme Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

> In performing its gatekeeping function, the Court must consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the admissibility of expert testimony are qualifications, relevance, and reliability. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1341 (11th Cir. 2003). Although there is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citation omitted). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005). The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. *Frazier*, 387 F.3d at 1258.

"The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

### B.     Late-Disclosed Expert Report

Federal Rule of Civil Procedure 26 governs the disclosure of expert witnesses and requires a party to provide "a complete statement of all opinions" offered by an expert witness and "the basis and reasons for them" "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B) & (D). Rule 37 provides that if a

party fails to conform to the disclosure requirements of Rule 26(a), the proffered information must be excluded "unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In other words, if an expert opinion is not disclosed in accordance with the scheduling order, it may be excluded under Rule 37. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007).

### III. DISCUSSION

#### A. *Daubert* Motion

"[E]xperts may be qualified in various ways." *Architects Collective v. Pucciano & English, Inc.*, 247 F. Supp. 3d 1322, 1333 (N.D. Ga. 2017). Although scientific training or education is one way of becoming a qualified expert, a person may obtain expert status through experience in a field. *Id.* (citing *Frazier*, 387 F.3d at 1260-31). "Thus, 'there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field.'" *Id.* (quoting *Santos v. Posadas de Puerto Rico Assocs. Inc.*, 452 F.3d 59, 63 (1st Cir. 2006)).

Plaintiff argues that Mr. Hu is unqualified to opine on brokering rates in China for the refrigerant industry. Mr. Hu is a Chinese-qualified attorney who is an expert in the brokerage and import market in China both domestically and internationally. For over 15 years, he has provided legal consultation and services related to commercial transactions, including for many large enterprises related to the import market on a variety of platforms. *See* Doc. 99-14. Although his curriculum vitae does not specifically reference clients in the refrigerant industry, according to Defendants'

7

response, Mr. Hu's experience "involves extensive refrigerant work in various aspects of its manufacturing, sale, and distribution, which is identified as something that he considered as part of his overall opinion in his expert report." Doc. 112 at 8. As noted by Defendants, Plaintiff would have been able to explore Mr. Hu's qualifications and experience in greater depth had Plaintiff chosen to depose the expert.

As courts have noted, "[t]he qualification standard for expert testimony is 'not stringent' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009). *See also Hewitt v. Liberty Mut. Group, Inc.*, 268 F.R.D. 681, 686 (M.D. Fla. 2010). The Court finds Mr. Hu minimally qualified based on his experience and training to opine as to the nature and extent of the rates charged by brokers in the relevant industry. The opinions he offers here are of the type he renders in the ordinary course of his profession. Further, while his opinions may not be conclusive on the ultimate issues, it appears, as a *prima facie* matter, that his testimony is likely to be of some assistance to the finder of fact.

The inquiry into a proffered expert's reliability is "flexible;" the Court must focus on the expert's principles and methodology, not on his conclusion. *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014). The Court has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 1306. As the gatekeeper, the Court must assess whether the "reasoning or methodology underlying the testimony is

8

scientifically [or technically] valid" and can be properly applied to the facts. *Id.* at 1306. As Defendants point out, Mr. Hu's "methodology" is not a technical one as in *Daubert*. Mr. Hu's report reflects that, in conducting his analysis, he consulted numerous resources, including national publications and industry reports, as well as discussions with industry executives. Doc. 99-14 at 18. Rule 703, and case law, clarify that an expert may rely on facts and data amassed by other experts and use that information to evaluate the facts and form opinions. *See Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988, 992 (S.D. Fla. 2016). ("[T]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification."); *Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mort. Corp.*, 2008 WL 3819752 at *2 (M.D. Fla., Aug. 12, 2008). Plaintiff criticizes Mr. Hu's opinions as being rife with generalizations. The Court agrees that the facts referenced in the report are somewhat minimal as to the details of the interviews conducted. However, as the Court will be the fact finder at trial, Mr. Hu's reliance on industry reports and national industry statistics is not speculative and otherwise sufficient to satisfy the reliability prong in these circumstances.

  The fact that Mr. Hu may not have dealt with this exact factual scenario before is not an automatic counterweight that necessitates the exclusion of his testimony. Moreover, any potential issues with Mr. Hu's testimony may be brought out upon "vigorous cross-examination" and "presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

Generally, in a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for h[er]self." *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-CIV-Cooke/Torres, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert's] testimony is superfluous and unnecessary."). That is because the Court as the fact finder is "presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for practical and sensible reasons." *Ass Armor*, 2016 WL 7156092, at *4 (internal quotation marks and citations omitted). At trial, the Court, as fact finder, is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it. *See Brown*, 415 F.3d at 1270; *N.W.B. Imports and Exports, Inc. v. Eiras*, No. 3:03-cv-1071-TJC-MMH, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005) (finding in non-jury trial that gatekeeping purpose of *Daubert* was not implicated). Accordingly, for this reason and those stated above, the Court will deny Plaintiff's motion to exclude Mr. Hu's testimony.

B.   **Motion to Strike**

Plaintiff moves to strike (Doc. 117) the supplemental report of Mr. Hu (Doc. 112-1) that Defendants attach to their response to the *Daubert* motion. In support of its

motion to strike, Plaintiff argues the supplemental report offers new opinions, which are untimely under the Court's Scheduling Order. Doc. 117. On August 18, 2020, the Court entered an amended Case Management and Scheduling Order that set a deadline for the disclosure of defense expert reports by June 1, 2020. Doc. 63 at 1. Defendants provided the initial report of Mr. Hu (Doc. 99-14) to Plaintiff on June 1, 2020. They submitted his supplemental report on August 27, 2021 (Doc. 112-1). In the supplemental report, Mr. Hu reiterates his opinion from the first report that brokers in China in the same industry as Plaintiff charged a rate of 3.93% to 5.66% over factory cost. *Compare* Doc. 112-1 at 5, *with* Doc. 99-14 at 7.

Plaintiff submits that the supplemental report contains two new opinions that were not included in the initial report. Specifically, Plaintiff directs the Court to the following two opinions in the supplemental report, which Plaintiff submits are new and should be stricken:

> [T]here is no identifiable and specific difference between the broker rate of refrigerant related production and other chemical products.
>
> [T]he market price for the products at issue during the relevant time would be the factory cost plus the broker rate, which would be the price that purchasers like the BMP entities would have paid in the open market.

Doc. 117 at 5 (quoting Doc. 112-1 at 5).

Defendants have failed to respond to the motion despite being given an extension of time to do so. *See* Doc. 123. Thus, the motion is deemed unopposed. *See* M.D. Fla. Local Rule 3.01(c). Defendants do not demonstrate that their failure to

11

timely disclose the two new opinions in the supplemental report was substantially justified or was harmless. Pursuant to Rule 37, the untimely supplemental report is due to be stricken to the extent it contains new opinions. Accordingly, it is hereby

**ORDERED**:

1. Plaintiff T.T. International's Motion to Exclude the Testimony of Defendants' Expert, Mr. Dong "Daly" Hu (Doc. 101) is **DENIED**.

2. Plaintiff T.T. International's Motion to Strike Supplemental Report of Defendants' proposed Expert, Mr. Dong Hu (Doc. 117) is **GRANTED,** as to the two new opinions.

**DONE AND ORDERED** in Tampa, Florida on March 22, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any