UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD,

     Plaintiff,

v.                                                          Case No: 8:19-cv-2044-CEH-AEP

BMP INTERNATIONAL, INC. and
BMP USA, INC.,

     Defendants.

_____/

## O R D E R

This matter comes before the Court on the parties' cross motions for summary judgment. The dispute relates to Plaintiff's sale of refrigerants, disposable cylinders, and related products to Defendants, which were shipped from China and received by Defendants in U.S. locations, including Tampa, Florida. While it is undisputed that Defendants received the products, the parties disagree as to how much Defendants owe Plaintiff for the products. Pending are Defendants' Motion for Summary Judgment as to Counts I, II, VII, VIII, X, and XI of the Plaintiff's Complaint (Doc. 100), Plaintiff's response in opposition (Doc. 115), Plaintiff's Motion for Summary Judgment (Doc. 102), Defendants' response in opposition (Doc. 116), Plaintiff's reply (Doc. 119), and the parties' stipulation of facts (Docs. 79, 80, 114). In Defendants' motion, they seek an order granting summary judgment in their favor as to Plaintiff's breach of contract, account stated, and open account claims. In Plaintiff's motion, it seeks summary judgment in its favor on its breach of contract claims, its unjust

enrichment claims, and as to the undisputed portion of its damages. The Court, having considered the motions and being fully advised in the premises, will deny Defendants' motion for summary judgment and grant, in part, Plaintiff's motion.

## I.    BACKGROUND

### A.    Facts[1]

Plaintiff, T.T. International Co., Ltd. ("Plaintiff"), is a company organized under the laws of the People's Republic of China and is engaged in the business of selling refrigerants, disposable cylinders, and related products and equipment to importers, such as Defendants. Doc. 102 at 2; Doc. 100 at 2. Tianli Zhang ("Tianli") is Plaintiff's president. Doc. 114 ¶ 1. Defendants BMP International, Inc. ("BMP Int'l") and BMP USA, Inc. ("BMP USA") (collectively "Defendants") are Florida corporations that, among other things, import goods purchased from Chinese suppliers and brokers, and resell them for a profit. *Id.* ¶ 2. Xianbin "Ben" Meng ("Meng") is president of both Defendants. *Id.* ¶ 3.

BMP Int'l began purchasing goods from Plaintiff in 2012. *Id.* ¶ 4. For each purchase, BMP Int'l paid Plaintiff the amount identified on each Commercial Invoice ("CI") on an invoice-by-invoice basis. *Id.* ¶ 5. Plaintiff continued to issue CIs for each transaction. *Id.* ¶ 6.

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulations of Agreed Material Facts (Doc. 79, 80, 114). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

At Meng's request, in or about June 2015, Plaintiff began shipping products to Defendant BMP USA. *Id.* ¶ 7. BMP USA ultimately became the primary Defendant that ordered goods from Plaintiff as its business relationship with BMP Int'l eventually phased out over time. *Id.* ¶ 8.

Throughout 2016 and 2017, Plaintiff periodically sent "payment details" to Meng via email ("Summaries"). *Id.* ¶ 9. The Summaries did not differentiate between Defendants. *Id.* ¶ 10. From August 30, 2016 through July 21, 2017, Plaintiff sent Defendants eight separate emails that attached Summaries. *Id.* ¶ 11; *see* Doc. 99-7, Exhs. 1-9. The amounts in the Summaries were in U.S. dollars. Doc. 114 ¶ 12.

Defendants' inventory manager, Wendy Wang, maintained an internal Microsoft Excel spreadsheet to track inbound shipments of product purchased by Defendants from Plaintiff ("Defendants' Spreadsheet"). *Id.* ¶ 13; *see* Doc. 99-3 at 158–228. Among other things, Defendants' Spreadsheet contains specific information for each order that was provided by Plaintiff, including the (a) product; (b) quantity; (c) importer name (i.e., Defendants); (d) estimated date of arrival; (e) corresponding CI number; and (f) the "Invoice Amount." Doc. 114 ¶ 15. All the goods identified on Defendants' Spreadsheet were purchased from Plaintiff and received by Defendants. *Id.* ¶ 15.

Defendants were responsible for shipping the goods to the U.S. and obtaining clearance for those goods to be imported into the U.S. with the assistance of a customs broker. *Id.* ¶ 16. ACB Global Import Inc. ("ACB") was one of Defendants' customs broker during most of their business relationship with Plaintiff. *Id.* ¶ 17. ACB, as

Defendants' attorney-in-fact, submitted to U.S. Customs and Border Protection ("Customs") a Form 7501 for each shipment of goods from Plaintiff to Defendants. *Id.* ¶ 18. Plaintiff produced copies of the factory invoices for goods sold to BMP Int'l and BMP USA on January 6, 2021. *Id.* ¶ 19. The date of the last BMP CI is May 25, 2018. *Id.* ¶ 20.

### B.    Invoices to BMP Int'l and 7501 Forms

On November 2, 2020, BMP Int'l produced to Plaintiff (a) fifty-three Commercial Invoices ("CI"), and (b) fifty-three Department of Homeland Security U.S. Customs and Border Protection Entry Summaries," otherwise identified as Customs Form 7501 ("7501 Forms"). Doc. 79 ¶ 1. The parties have submitted a table (Doc. 79 at 7–8) matching each CI with its corresponding 7501 Form. The parties stipulate that the 7501 Forms produced and identified on the table are true, accurate, and authentic copies of the original 7501 Forms that BMP Int'l, or its customs broker ACB, submitted to Customs. Doc. 79 ¶ 2.

The 7501 Forms identified were prepared by ACB from information set forth on other documents, including the corresponding CI, which contained a description of the goods imported, the quantity, and their monetary "Amount" relative to each. *Id.* ¶ 3.

The parties stipulate that each CI identified on the table (Doc. 79 at 7–8) was received by BMP Int'l from Plaintiff at or about the time the goods were ready to clear Customs and are authentic copies of the CIs that BMP Int'l received from Plaintiff. Doc. 79 ¶ 4. Each CI accurately reflects the quantity and type of goods received by

BMP Int'l from Plaintiff for BMP Int'l's use, sale, retention, or other benefit. *Id.* ¶ 5. BMP Int'l did not return to Plaintiff any of the goods listed on any of the CIs. *Id.* ¶ 6.

ACB, as BMP Int'l's authorized attorney-in-fact, (a) prepared each 7501 Form, and (b) submitted each 7501 Form to Customs. *Id.* ¶ 7. Each 7501 Form identifies the Import Date and Entry Date of the listed goods for that respective 7501 Form and corresponding CI number. *Id.* ¶ 8. The "Total Entered Value" listed in Box 35 of each respective 7501 Form matches the "Amount" listed on each corresponding CI submitted with it to Customs. *Id.* ¶ 9. ACB paid duties to Customs for the goods listed in each respective 7501 Form. *Id.* ¶ 10. BMP Int'l subsequently reimbursed ACB for all duties paid by ACB for the goods listed on each respective 7501 Form. *Id.* The "Total Entered Value" listed in Box 35 of each respective 7501 Form was used to calculate the total duties owed on the goods listed. *Id.* ¶ 11.

It is BMP Int'l's position that the "Total Entered Value" from Box 35 was used to calculate the duty costs because Plaintiff had not yet produced the factory invoices containing the actual "factory costs" needed to calculate the actual total duties at the time each 7501 Form was prepared. *Id.* BMP Int'l or its authorized representative, ACB, represented to Customs that the "Total Entered Value" of the goods imported was the "Amount" listed on each CI. *Id.* ¶ 12.

BMP Int'l agreed to pay Plaintiff for the goods listed on each CI, however, BMP Int'l maintains that the "Amount" listed on each CI does not reflect the price it agreed to pay Plaintiff for the goods. *Id.* ¶¶ 13, 14. BMP Int'l maintains that the amount of

monetary compensation it agreed to pay Plaintiff for each transaction was to be a function of the "factory cost" of the goods, plus a "reasonable commission" of one to two percent of the "factory cost" of the goods. *Id.* ¶ 14.

With respect to each 7501 Form, BMP Int'l admits that neither it, nor ACB, furnished to Customs any information showing a "Total Entered Value" of the goods that is different than the amount listed as the "Total Entered Value" for the goods reflected in Box 35 of each corresponding 7501 Form as required by the last sentence of Box 36. *Id.* ¶ 15. It is BMP Int'l's position that this is because Plaintiff had not yet produced the factory invoices containing the actual "factory costs" needed to calculate the actual total duties. *Id.*

## C.    Invoices to BMP USA and 7501 Forms

On November 2, 2020, BMP USA produced to Plaintiff: (a) 272 Commercial Invoices ("CI"), and (b) 272 Department of Homeland Security U.S. Customs and Border Protection Entry Summaries otherwise identified as Customs Form 7501. Doc. 80 ¶ 1. The parties have submitted a table (Doc. 80 at 7–13) matching each CI with its corresponding 7501 Form. The parties stipulate that the 7501 Forms produced and identified on the table are true, accurate, and authentic copies of the original 7501 Forms that BMP USA, or its customs broker ACB, submitted to Customs. Doc. 80 ¶ 2.

While the 7501 Form bearing Bates number "BMPUSA999542" identifies "Puremann Inc." as the "Ultimate Consignee" and "Importer of Record," that 7501

Form expressly references Invoice No. TT18423, which identifies BMP USA as the receiver of said invoice. *Id.* ¶ 3.

The 7501 Forms identified were prepared by ACB from information set forth on other documents, including the corresponding CI which contained a description of the goods imported, the quantity, and their monetary "Amount" relative to each. *Id.* ¶ 4.

The parties stipulate that each CI identified on the table was received by BMP USA from Plaintiff at or about the time the goods were ready to clear Customs and are authentic copies of the CIs that BMP USA received from Plaintiff. *Id.* ¶ 5. Each CI accurately reflects the quantity and type of goods received by BMP USA from Plaintiff for BMP USA's use, sale, retention, or other benefit. *Id.* ¶ 6. BMP USA did not return to Plaintiff any of the goods listed on any of the CIs. *Id.* ¶ 7.

ACB, as BMP USA's authorized attorney-in-fact, (a) prepared each 7501 Form, and (b) submitted each 7501 Form to Customs. *Id.* ¶ 8. Each 7501 Form identifies the Import Date and Entry Date of the listed goods for that respective 7501 Form and corresponding CI number. *Id.* ¶ 9. The "Total Entered Value" listed in Box 35 of each respective 7501 Form matches the "Amount" listed on each corresponding CI submitted with it to Customs. *Id.* ¶ 10. ACB paid duties to Customs for the goods listed in each respective 7501 Form. *Id.* ¶ 11. BMP USA subsequently reimbursed ACB for all duties paid by ACB for the goods listed on each respective 7501 Form. *Id.* The

"Total Entered Value" listed in Box 35 of each respective 7501 Form was used to calculate the total duties owed on the goods listed. *Id.* ¶ 12.

It is BMP USA's position that the "Total Entered Value" from Box 35 was used to calculate the duty costs because Plaintiff had not yet produced the factory invoices containing the actual "factory costs" needed to calculate the actual total duties at the time each 7501 Form was prepared. *Id.* BMP USA, or ACB as its authorized attorney-in-fact, represented to Customs that the "Total Entered Value" of the goods imported was the "Amount" listed on each CI. *Id.* ¶ 13.

BMP USA agreed to pay Plaintiff for the goods listed on each CI, however, BMP USA maintains that the "Amount" listed on each Invoice does not reflect the price it agreed to pay Plaintiff for the goods. *Id.* ¶¶ 14, 15. BMP USA maintains that the amount of monetary compensation it agreed to pay Plaintiff for each transaction was to be a function of the "factory cost" of the goods, plus a "reasonable commission" of one to two percent of the "factory cost" of the goods. *Id.* ¶ 15.

With respect to each 7501 Form, BMP USA admits that neither it, nor ACB, furnished to Customs any information showing a "Total Entered Value" of the goods that is different than the amount listed as the "Total Entered Value" for the goods reflected in Box 35 of each corresponding 7501 Form as required by the last sentence of Box 36. *Id.* ¶ 16. It is BMP USA's position that this is because Plaintiff had not yet produced the factory invoices containing the actual "factory costs" needed to calculate the actual total duties. *Id.*

### D.    Procedural Background

Plaintiff filed a twelve-count complaint against Defendants in August 2019. Doc. 1. Plaintiff also sued iGas USA, another company controlled, in whole or in part, by Meng. *Id.* The claims against iGas USA have been resolved and iGas was dismissed from this action in October 2020. Doc. 75. The claims that remain against BMP Int'l are breach of contract (Count I); unjust enrichment (Count IV), account stated (Count VII), and open account (Count X). The same claims remain against Defendant BMP USA: breach of contract (Count II), unjust enrichment (Count V), account stated (Count VIII), and open account (Count XI). The Complaint does not request a jury trial. Plaintiff moves for summary judgment as to its claims for breach of contract and unjust enrichment and a portion of its damages. Doc. 102. Specifically, Plaintiff seeks summary judgment in its favor as to 52 unpaid commercial invoices issued to BMP Int'l ("BMP Int'l CIs"); 272 unpaid commercial invoices issued to BMP USA ("BMP USA CIs"); and four unpaid commercial invoices for product shipped to third parties at Meng's request ("Meng CIs").[2] Doc. 102 at 1, n.1. Plaintiff also seeks partial summary judgment for $969,588 in damages, which is undisputed by Defendants.

Defendants move for summary judgment as to Plaintiff's claims for breach of contract, account stated, and open account. Doc. 100. The motions have been fully

---

[2] The "Meng CIs" consist of one invoice to LM Supply, dated June 28, 2017 (Doc. 99-6 at 334) and three invoices to Coolmaster USA, Inc., dated October 16, 2017; September 6, 2017; and September 27, 2017. *See* Doc. 99-6 at 336–38. The Meng CIs are not the basis of Plaintiff's breach of contract claims. Doc. 102 at 22, n.15. Plaintiff moves for summary judgment as to the Meng CIs on its unjust enrichment claim only.

briefed, and the parties have filed depositions, affidavits, stipulations, and expert reports in support. *See* Docs. 79, 80, 99, 113, 114, 115, 116, 119.

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving

party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## B. Applicable Law

In diversity actions such as this one, the Court is required to apply the substantive law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Florida law, a court makes a separate choice of law determination with

respect to each claim under consideration and must characterize the legal issue and determine whether it sounds in tort, contracts, property law, or some other area of the law. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." *Id.* (citation omitted).

Florida's enactment of the Uniform Commercial Code ("UCC") gives effect to choice-of-law provisions contained in contracts. *See* Fla. Stat. § 671.105(1) ("when a transaction bears a reasonable relation to this state and also another state or nation, the parties may agree that the law either of this state or such other state or nation will govern their rights and duties"). Where, as here, no choice of law provision exists in the invoices or any other purported written agreement, Florida's version of the U.C.C. directs that it shall apply the provisions of Florida's U.C.C. when the transaction at issue bears "an appropriate relation" to the State of Florida. Fla. Stat. § 671.105(1). Here, the goods were shipped into Tampa and the transactions at issue in the breach of contract claims are appropriately related to Florida such that Florida law applies.

For unjust enrichment claims, which are quasi-contractual in nature, courts apply Florida's "lex loci contractus" rule for choice of law determinations. *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1564 (S.D. Fla. 1997) ("application of the 'lex loci contractus' rule determines whether Florida or Maryland law applies to ThunderWave's unjust enrichment claims); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1316 (S.D. Fla. 2009) ("An unjust enrichment claim is one in the nature of quasi-contract."). Based on the elements of an unjust enrichment

12

claim, the last act necessary to establish unjust enrichment is the acceptance and retention of the benefit conferred. *James Gorman Ins., Inc. v. Bankers Ins. Co.*, No. 8:16-CV-816-JDW-AEP, 2018 WL 1863607, at *2 (M.D. Fla. Mar. 9, 2018), report and recommendation adopted, No. 8:16-CV-816-JDW-AEP, 2018 WL 3635095 (M.D. Fla. Apr. 16, 2018). On the record before the Court, the goods, at least in part, were delivered and accepted by Defendants in Tampa, Florida. Thus, the Court applies Florida law to the Plaintiff's unjust enrichment claims. The Court similarly finds Plaintiff's state law claims of open account and account stated are governed by Florida law, and the parties do not argue to the contrary. The parties have not provided authority or a choice-of-law analysis to suggest the application of another state's law.

## III.   DISCUSSION

### A. Breach of Contract

Under Florida law, the elements of a contract are offer, acceptance, and consideration. *See Air Products and Chemicals, Inc. v. Louisiana Land Exploration Co.*, 806 F.2d 1524, 1529 (11th Cir.1986). To establish a claim for breach of contract in Florida, a plaintiff must prove: "(1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs.*, Inc., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003). Contracts for the sale of goods are governed by Florida's version of the U.C.C. *See* Fla. Stat. § 672.102 (defining the scope of Florida's U.C.C.).

Plaintiff contends that each of the BMP CIs constitute a binding contract for the sale of goods between Plaintiff and Defendants because each CI clearly stated the terms of the agreement. Doc. 102 at 14–16. Further, it is undisputed that Defendants

received the goods shipped as reflected by the CIs, and Defendants did not return the goods to Plaintiff. Docs. 79, 80. However, Defendants argue they never agreed to the cost of the goods as reflected in the CIs. Moreover, they contend no contract existed at all because invoices are not contracts, Defendants did not sign the invoices, and the parties had orally agreed to another arrangement regarding the price of the goods. Doc. 100 at 9–12.

The existence of a contract is a question of fact. *See Consolo v. A.M.K. Corp.*, 344 So. 2d 1285, 1286 (Fla. 3d DCA 1977) (per curiam); *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D. Fla. 2002), *aff'd sub nom. Lockheed Martin Corp. v. Galaxis U.S.A. Ltd.*, 88 F. App'x 389 (11th Cir. 2003) ("the existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances"). As evidenced in the cross motions for summary judgment and in the conflicting evidence submitted on behalf of the parties, questions of material fact remain as to the existence of a contract between the parties, thereby precluding summary judgment.

In support of their position that an invoice is not a contract, Defendants cite out-of-circuit case law from Arizona and Arkansas. *See* Doc. 100 at 10. Defendants fail to demonstrate why this Court should apply state law cases from either of those jurisdictions. Defendants cite to Florida law in other sections of their motion and, as noted above, there does not appear to be any real dispute that Florida law would govern the breach of contract claims and other state law claims brought by Plaintiff in this action.

Under Florida law, "[t]he terms of a contract for the sale of goods may be encompassed in an invoice or series of invoices." *Assicurazioni Generali S.p.A. v. Facey Commodity Co., Inc.*, No. 10-20736-CIV, 2012 WL 12865254, at *3 (S.D. Fla. Sept. 27, 2012) (citing *Pestana v. Karinol Corp.*, 367 So. 2d 1096, 1098 (Fla. 3d DCA 1979) (finding a contract "embodied in a one-page invoice written in Spanish and prepared by the defendant" to be enforceable); *Penrod Lumber Co. v. Great S. Wood Preserving, Inc.*, 2009 WL 5171759, at *2 (M.D. Fla. Dec. 23, 2009) (stating that the "invoices . . . comprise the only written indica of the parties' contract").

The CIs at issue here included the issuer of the invoice (Plaintiff), the company to which the invoice was issued and the goods shipped (to the individually named Defendants), the terms of payment, a description of the goods, the quantity of the goods, and the unit price and total monetary value of the goods shipped. *See, e.g.,* Doc. 99-6 at 7–338. In support of its motion for summary judgment, Plaintiff submits the affidavit of its president Tianli, who attests that the invoices accurately reflect the quantity and type of goods shipped to Defendants for their benefit and for which Defendants have not paid Plaintiff.[3] Doc. 99-6. Plaintiff also argues that the 7501 forms signed by Defendants' broker and submitted to Customs evidence the value agreed to by the parties. Plaintiff submits the affidavit of Robin Puskar, licensed customs broker, whose company ACB submitted the documentation to Customs on behalf of

---

[3] The Court notes the Tianli affidavit does not specifically state that the price per unit referenced in the CIs is accurate. *See* Doc. 99-6. However, Plaintiff has proffered the 7501 Forms submitted to Customs, and signed by ACB as Defendants' agent, as evidence of the value agreed to by the parties, thereby creating a disputed question of fact on the issue.

Defendants representing that the "total entered value" of the goods was true and accurate. Doc. 99-8. According to Puskar, BMP informed ACB that the CIs contained an accurate description of the goods BMP was purchasing from Plaintiff and the price BMP agreed to pay for those goods.[4] *Id.* ¶¶ 22, 38.

For their argument, Defendants submit a supplemental declaration of Puskar clarifying her assumptions about the amounts listed on the CIs. *See* Doc. 116-2. Further, Defendants submit testimony and evidence contending that the amounts stated in the CIs were the amounts that Plaintiff hoped that Defendants could get for the sale of the product to customers and were not the terms that were agreed to. Doc. 116-1 ¶ 27. According to Yan "Yana" Zhang, former sales manager for Plaintiff, Tianli instructed her to issue the CIs with those substantially higher amounts because Tianli wanted to ensure that BMP would sell the product at those rates. *Id.* ¶¶ 27–29. Tianli explained to Yana that he was going to share in BMP's profits from the sale of the goods after adjusting the CIs to actual factory costs. *Id.* ¶ 27. Defendants submit that the amounts listed in the CIs were never intended to be the price that Defendants had to pay for the goods. Yana states that "[e]veryone in [Plaintiff's] office knew of this

---

[4] In their response in opposition to Plaintiff's motion, Defendants argue that the Court should disregard portions of the Puskar affidavit because she references communications with one of Defendants' companies, not a specific individual. Doc. 116 at 5. Defendants further contend that notwithstanding Puskar's failure to identify the declarant, such hearsay comments about instructions she received from an unknown representative at the company are unreliable and improper summary judgment evidence. To the extent that the statements are admissions of a party opponent, they are not hearsay. *See* Fed. R. Evid. 801(c)(2). Defendants have not moved to strike the Puskar affidavit, but even if the Court were so inclined, which it is not, a plethora of disputed facts remain that preclude summary judgment on these claims.

arrangement." *Id.* ¶ 26. Defendants also rely on testimony of their inventory manager, Wendy Wang, who states the only purpose of the CIs was for clearing goods for customs. Doc. 99-5 at 92.

According to Defendants' president Meng, he and Tianli made an oral agreement that Defendants would pay Plaintiff for the goods shipped based on a rate of the factory cost plus a reasonable commission (of approximately 2%). Doc. 100-1 ¶ 9. Defendants contend the only reason the amounts listed in the CIs were the same as that submitted to Customs on the 7501 Forms was because Plaintiff never provided Defendants with evidence of the actual factory costs. *Id.* ¶ 42. Thus, Defendants argue that the amount owed was to be the factory costs plus a reasonable commission based on a percentage of the factory costs. *See* Docs. 79 ¶ 14; 80 ¶ 15. Additionally, Defendants argue that the CIs were never signed by Defendants acknowledging assent to any of the pricing terms. Doc. 100-1 ¶ 42.

Plaintiff argues that the "oral side deal" between Meng and Tianli is unenforceable because it violates Florida's Statute of Frauds, which provides in relevant part:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

Fla. Stat. § 672.201(1). While Defendants may not be able to enforce the terms of the "oral side deal," at a minimum, this evidence further confirms that genuine issues of material fact remain as to whether the CIs constituted enforceable contracts.

The U.C.C. provides that "[a] contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." § 672.204(1), Fla. Stat. In a light favorable to Plaintiff, the CIs may constitute written contracts for the sale of goods given Defendants' conduct of accepting and retaining the product and the conduct of their customs broker in signing off on the value in the 7501 Forms. Plaintiff also relies on Defendants' own Spreadsheet and summary ledger as evidence that Defendants agreed to pay Plaintiff for the goods based on the amounts set forth in the BMP CIs. Doc. 119 at 2–3. On the other hand, Defendants proffer evidence that, in a light most favorable to them, while Defendants agreed to the quantity of the goods shipped, they never agreed to the pricing as set forth in the CIs, Meng repeatedly voiced objection to the amounts listed in the CIs as contained in the Summary emails from Plaintiff, and representatives of Plaintiff purportedly assured Meng that Defendants were not expected to pay the amounts listed in the CIs. Based on the alleged conduct of Plaintiff, there is evidence to support Defendants' argument that no contract was formed by the CIs. It is apparent that, on this record, genuine issues of material fact are in dispute, and the cross motions for summary judgment on Plaintiff's breach of contract claims in Counts I and II are, therefore, due to be denied.

**B. Unjust Enrichment**

Plaintiff moves for summary judgment on its unjust enrichment claims in Counts IV and V based on two separate theories: (1) as an alternative to its breach of contract claims concerning the BMP CIs; and (2) a claim for recovery against Defendants for failing to remit any payment to Plaintiff for the goods shipped pursuant to the Meng CIs. Doc. 102 at 23–24. "It is well settled in Florida that . . . a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015). However, a plaintiff may allege alternative claims. Fed. R. Civ. P. 8(d). Here, Plaintiff claims that the BMP CIs are contracts which Defendants have breached, and it pleads its unjust enrichment claims in the alternative. As discussed above, Defendants adamantly dispute that the CIs are contracts.

Under Florida law, a claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2000)).

*1.    BMP CIs*

It is undisputed that Plaintiff conferred a benefit on Defendants in that the goods identified in the BMP CIs were shipped to Defendants. Docs. 79 ¶ 4, 80 ¶ 5. It is further

19

established that Defendants retained the goods for their own benefit, agreed to pay for the goods, and did not return the goods to Plaintiff. Docs. 79 ¶¶ 5, 6, 13; 80 ¶¶ 6, 7, 14. These stipulations by Defendants appear to relate only to the BMP Int'l CIs (Doc. 79) and BMP USA CIs (Doc. 80), not the Meng CIs.

Although Defendants dispute the amount owed for the goods referenced in the BMP CIs, *see* Doc. 79 ¶ 14; 80 ¶ 15, it is undisputed that Defendants agreed to pay Plaintiff for the goods and have retained the goods referenced in the BMP CIs without paying the full value of them—whatever that amount is determined to be.[5] Thus, it would be inequitable for Defendants to keep the goods without paying for them.

Defendants respond that there is no evidence that Plaintiff does not have an adequate remedy at law. Given Defendants' strong opposition to the existence of a contract, this argument is circular and unavailing to defeat a finding of liability on the unjust enrichment claims.[6]

---

[5] Defendants' expert Anthony Phillips opined that the remaining balance owed by BMP to Plaintiff, for the time period he analyzed, is $969,588. Doc. 99-9 at 13. Additionally, Defendants submit that the value of the goods, based on their expert Dong Daly Hu, would be the factory cost plus a three percent broker fee, which is what Ruby applied in her reconciliations in August 2018 and October 2018. Doc. 116 at 17. Thus, at a minimum, Defendants do not dispute that $969,588 is owed. *See* Section E, *infra*, for a discussion of damages.

[6] It is undisputed that Plaintiff's unjust enrichment claim is alleged in the alternative to its claims for breach of contract.  If it is determined that no contract exists between the parties, Plaintiff may pursue its unjust enrichment claim as to the BMP CIs. And it is undisputed that Plaintiff has not alleged an underlying contract between Plaintiff and Defendants regarding the Meng CIs. Doc. 102 at 22 n.15.

Defendants next argue that Plaintiff fails to refute their affirmative defense of unclean hands.[7] A defendant seeking to avail itself of the doctrine of unclean hands must satisfy two requirements. *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993). The defendant must first demonstrate that "the plaintiff's wrongdoing is directly related to the claim against which it is asserted." *Id.* at 451 (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)). "Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by [plaintiff's] conduct." *Calloway*, 986 F.2d at 451 (citing *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979), *cert. denied*, 445 U.S. 917 (1980)).

In support of their affirmative defense, Defendants proffer the testimony and declaration of Meng who states he was repeatedly told by Plaintiff that he did not have to pay the amounts in the BMP CIs, as only the factory costs were due and owing under the parties' agreement. *See* Doc. 100-1 ¶¶ 20, 21, 22. Additionally, Defendants submit the affidavit of Yana who confirmed she essentially told Meng the same thing. Doc. 116-1 ¶¶ 30, 33. Plaintiff contradicts this evidence. By Defendants' argument as to unclean hands, they challenge the amount of damages claimed by Plaintiff.  The Court agrees that there are disputed issues of material fact regarding the amount of

---

[7] In their Ninth Affirmative Defense, Defendants allege that "Plaintiff is not entitled to obtain any relief requested in its equitable claim for unjust enrichment in that the Plaintiff has unclean hands relative to the performance of the transactions at issue and the amounts sought in this proceeding as its prior, inconsistent assertions are in opposite as to what is being sought in this proceeding." Doc. 16 at 12; Doc. 17 at 12.

damages, except as conceded by Defendants,[8] regarding Plaintiff's unjust enrichment claims. Defendants do not challenge, however, that Plaintiff conferred a benefit on them or that they accepted and retained the benefit with regard to the BMP CIs. *See* Docs. 79 ¶¶ 4, 5, 6, 13; 80 ¶¶ 5, 6, 7, 14.

Under the doctrine of unclean hands, "no one shall be permitted to profit from his own fraud or wrongdoing, and [ ] one who seeks the aid of equity must do so with clean hands." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 n.3 (Fla. 2d DCA 2007) (quoting *Yost v. Rieve Enters., Inc.*, 461 So.2d 178, 184 (Fla. 1st DCA 1984)). Some courts have found that the unclean hands doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Royal Palm Properties, LLC v. Premier Est. Properties, Inc.*, No. 10-80232-CV, 2010 WL 3941745, at *2 (S.D. Fla. Oct. 6, 2010) (quoting *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329–30 (1994) (Scalia, J., concurring)). The record evidence demonstrates that Defendants cannot completely foreclose recovery, as even the defense experts agree that some additional money is owed Plaintiff. But Defendants have raised an issue of disputed material fact as to the applicability of its affirmative defense as it relates to the damages beyond what they concede is owed.

---

[8] Defendants do not respond to Plaintiff's argument that damages should be awarded, at a minimum, in the amount of $969,588, based on the defense expert's report. *See* Section E., *infra*.; *see also* Doc. 99-9 at 3–13.

Because it is undisputed that Plaintiff conferred a benefit on Defendants and that they accepted and retained the benefit with regard to the BMP CIs, *see* Docs. 79 ¶¶ 4, 5, 6, 13; 80 ¶¶ 5, 6, 7, 14, the Court finds no disputed fact that Defendants have been unjustly enriched as to those goods Defendants concede they received, and for which they have not fully paid (as referenced in Docs. 79 and 80 and the defense expert report at Doc. 99-9 at 13). However, issues of fact remain as to the full value of the goods retained. Accordingly, Plaintiff is entitled to summary judgment as to liability on their unjust enrichment claims (as to those goods referenced in the BMP CIs, not the Meng CIs), but only to the extent that no express contract exists. In the event the Court, as fact finder, determines that an express contract or contracts existed, Plaintiff would be unable to recover on their alternative unjust enrichment claims for those goods delivered under contract. However, if no express contracts exist, then the Court has already determined liability, and a portion of damages as discussed below, as to the unjust enrichment claims and will then determine only the remaining amount of damages, if any, to be awarded to Plaintiff on its unjust enrichment claims as to the BMP CIs.

### 2. *Meng CIs*

As for the Meng CIs, the motion for summary judgment is denied as to liability and damages. While Plaintiff cites to Docs. 79 and 80 for the undisputed facts that Defendants received and retained the goods referenced in the BMP CIs, Plaintiff fails to direct the Court to undisputed evidence in the record to demonstrate that Defendants received and retained the benefit of the goods referenced in the Meng CIs

that were purportedly shipped to LM Supply and Coolmaster. *See* Doc. 102 at 23; *see also* Doc. 99-6 at 334–38. It is undisputed that Coolmaster and LM Supply are companies owned or controlled by Meng. Doc. 99-4 at 15. Plaintiff argues that although Defendants have not stipulated concerning the goods identified on the Meng CIs, Defendants' internal records show Defendants received them. Doc. 102 at 7 (citing Wendy Wang's spreadsheets). Review of Defendants' spreadsheets shows entries for the LM Supply CI (7566) and the three Coolmaster CIs (7884, 7660, 7857). *See* Doc. 99-3 at 214, 218, 216, 218, respectively. The spreadsheet identifies the importer as "LM Supply" or "Coolmaster," as applicable. *See id.* Plaintiff contends Meng's entities transferred the goods they received from Plaintiff to Defendants who subsequently sold the goods to their U.S. customers. Doc. 102 at 23. In support, Plaintiff submits the Tianli affidavit which indicates that the LM Supply and Coolmaster invoices were prepared and submitted *at the direction of Meng*, and the goods, which have not been paid for, were shipped to those entities as directed by Meng. Doc. 99-6 ¶¶ 14–23. Plaintiff argues that, at a minimum, summary judgment should be granted as to the goods referenced in the Meng CI TTI7566, which were initially shipped to LM Supply and subsequently transferred to Defendants who sold them to customers in the United States. Doc. 102 at 24. In support, Plaintiff references a letter from LM Supply's counsel, but fails to provide a record cite for the letter from

counsel.[9] *Id.* In its reply, Plaintiff also cites to Meng's testimony that LM Supply served as an import agent for BMP USA. Doc. 99-2 at 52–53.

In response, Defendants argue there is no record evidence of a "direct" benefit retained by Defendants as it relates to the Meng CIs. Doc. 116 at 17.  "It is axiomatic that there must be a benefit conferred before unjust enrichment exists." *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So.2d 710, 712 (Fla. 2d DCA 1988). "[A] plaintiff must show that the defendant received a direct benefit." *Malamud v. Syprett*, 117 So. 3d 434, 438 (Fla. 2d DCA 2013).  The fact that LM Supply served as BMP's import agent does not establish that BMP received a direct benefit from the goods referenced in the Meng CI TTI7566. Here, Defendants submit that, at best, Plaintiff can show only an indirect benefit to Defendants, which they argue is insufficient to support a claim for unjust enrichment.[10] In a light favorable to Defendants, disputed issues of material fact exist as to whether Defendants received a direct benefit from Plaintiff as it relates to the goods referenced in the Meng CIs, and thus summary judgment will be denied on Plaintiff's unjust enrichment claim regarding the Meng CIs.

## C. Account Stated

---

[9] *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Even considering the letter, given Defendants' denial that it received a direct benefit from the goods in the Meng CIs, Doc. 116 at 17, questions of disputed fact remain on this issue.

[10] Additionally, Defendants argue that even if Plaintiff can show Defendants received the goods, there is no record evidence as to which of the corporate Defendants received the goods. This argument is less persuasive given the record evidence that both Defendants are owned by Meng, BMP USA ultimately became the primary Defendant that ordered goods from Plaintiff, and that BMP Int'l phased out over time (Doc. 114 at 2).

Defendants seek summary judgment in their favor on Plaintiff's claims for account stated in Counts VII and VIII. First, Defendants argue that Plaintiff never attached any "statement of account" to its Complaint. Rather, Plaintiff's Complaint makes reference to providing Meng with a USB drive which Defendants adamantly deny.

According to Plaintiff, its account stated claims are based on two separate and independent documents that constitute its "statement of account" to Defendants: (1) the BMP CIs; and (2) a flash drive containing Defendants' accounts itemized by CI number. Doc. 115 at 12. Plaintiff refutes Defendants' motion for summary judgment as to the account stated claims, arguing that Defendants' motion only addresses the USB flash drive and provides no argument regarding the BMP CIs constituting a statement of account. As for the flash drive, Plaintiff contends the motion must fail as Defendants admit they received an account statement from Plaintiff: "In the spring of 2018, Yana sent [Meng] a flash drive that included six spreadsheets on it. The separate files included files for 2015, 2016, and 2017 payments, as well as separate files for 2015, 2016, and 2017 invoices." Doc. 115 at 13 (quoting Declaration of Meng, Doc. 100-1 ¶ 26).

"An 'account stated' is defined as an agreement between persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment." *Idearc Media Corp. v. Premier Limousine, LLC*, No. 8:08-cv-1695-T-JSM-MAP, 2009 WL 482293, at *2 (M.D. Fla. Feb. 25, 2009) (quoting *Nants v. F.D.I.C.*, 864 F. Supp. 1211, 1219 (S.D. Fla. 1994)). Generally, an account stated

"arises from the rendition of a statement of transactions between the parties with a failure on the part of the party whom the account was rendered to object within a reasonable time or an express acquiescence in the account rendered." *Id.* (quoting *Nants*, 864 F. Supp. at 1219).

"An account stated comes into being when a creditor periodically bills a debtor for a certain amount, which amount is not objected to within a reasonable time." *Dudas v. Dade County*, 385 So.2d 1144 (Fla. 3d DCA 1980*); see also Robert C. Malt & Co. v. Kelly Tractor Co.*, 518 So.2d 991, 992 (Fla. 4th DCA 1988). Under Florida law, a copy of the account showing items, time of accrual of each, and amount of each must be attached. Fla. R. Civ. P. Form 1.933.

"A plaintiff may prove a prima facie case for account stated by proffering evidence that the account was rendered under circumstances which raise a presumption of assent." *Idearc Media Corp. v. Premier Limousine, LLC*, No. 8:08-cv-1695-JSM-MAP, 2009 WL 482293, at *3 (M.D. Fla. Feb. 25, 2009) (citing *Nants*, 864 F. Supp. at 1219-20). "The practice of periodic billings for certain amounts in the regular course of business, where no objection to the amount of the bill is made within a reasonable time, may raise such a presumption." *Id.* (citing *Nants*, 864 F. Supp. at 1219-20); *see also First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir. 1993). "[T]he presumption of correctness which attaches in an account stated stems from the statements themselves." *See Nants*, 864 F. Supp. at 1221; *see also Idearc Media Corp.*, 2009 WL 482293, at *3.

"For an account stated to exist, there must be an agreement between the parties that a certain balance is correct and due, as well as an express or implicit promise to pay this balance." *Georges v. Friedman & Co., P.A.*, 499 So. 2d 59, 59 (Fla. 4th DCA 1986) (reversing district court's order granting summary judgment where issues of fact existed as to whether an account stated existed and as to the agreement and the balance due). Here, questions of material fact remain as to an agreement regarding the balance due and whether an account stated existed either through the spreadsheets or ledger or though the CIs. In a light favorable to Plaintiff as the nonmoving party, the CIs were periodic billings for amounts certain in the regular course of business.  However, Meng testified that he repeatedly asserted objections to the amounts. Thus, disputed issues of fact preclude a finding of summary judgment on these claims. Like the unjust enrichment claims, if Plaintiff prevails on its breach of contract claims, it may not also recover for account stated.

### D. Open Account

Defendants move for summary judgment as to Plaintiff's claims for open account in Counts X and XI. Doc. 100 at 14–17. Defendants contend that the claims necessarily fail because Plaintiff does not identify which Defendant owed what, and instead, lumps together all transactions. It is undisputed that Plaintiff, internally, did not maintain separate accounts for the BMP entities. Doc. 99-7 at 23. According to Ruby Zhang, Plaintiff treated the BMP companies as one account because, although the names on the invoices were different, the shipping address was the same. *Id.*

Plaintiff responds that it attached an itemized account to its Complaint, and thus, Defendants' only argument on its open account claim fails. Doc. 115 at 14–16.

Defendants rely on *O'Melveny & Myers, LLP v. Adams*, 764 So. 2d 747 (Fla. 2d DCA 2000), in which the appellate court affirmed summary judgment in favor of the individual defendants on plaintiff's open account and account stated claims where the plaintiff law firm never sent a separate statement for fees to any of the individual defendants nor made any effort to isolate the services rendered for the benefit of any specific defendant. *Id.* at 748. Defendants here argue that Plaintiff similarly made no effort to separate its financial dealings with BMP Int'l versus its dealings with BMP USA. Because Plaintiff failed to provide separate periodic statements to the respective BMP entities, Defendants contend the Plaintiff's open account claims must fail. Plaintiff responds that it treated BMP Int'l and BMP USA as the same entity because Defendants treated themselves as the same. Both were owned and controlled by Meng, purchased the same product from Plaintiff, operated out of the same location, and had the same employees.[11] Doc. 99-2 at 43, 73–74.

The *O'Melveny* case is factually distinguishable. In *O'Melveny* a separate statement was not sent to the individual defendants at all. Here, Defendants, who are owned and controlled by the same person (Meng), were issued invoices—listing an address and telephone number that was the same for both Defendants—and Defendants were specifically identified by name—either BMP International Inc. or

---

[11] Meng testified that BMP stands for the "Ben Meng Project." Doc. 99-2 at 43.

BMP USA Inc.— on the invoices. *See* Docs. 1-1, 1-2, 1-3, 1-4, 1-5. As Plaintiff points out, each invoice has a number, and the summary of account (Doc. 1-7) itemizes the information by invoice number. And while Defendants are correct that it is not a "simple task" to compile the invoices associated with the respective Defendant, even Defendants acknowledge that experts have been retained to do this.

In commercial transactions in Florida, an "open account" refers to "an unsettled debt, arising from items of work or labor, goods sold, and other open transactions not reduced to writing, the sole record of which is usually the account books of the owner of the demand." *H & H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994). "It should not include express contracts or other obligations that have been reduced to writing." *Id.* Under Florida law, to state a valid claim on an open account, a plaintiff must attach an "itemized" copy of the account. *Id.*; *see also* Florida Rules of Civil Procedure Form 1.932 (noting a "copy of the account showing items, time of accrual of each, and amount of each must be attached"). Plaintiff attaches a table to its Complaint (Doc. 1-7) which it submits is an itemized account of the Defendants' transactions with Plaintiff. Ruby Zhang acknowledges that this summary document was never provided in this format to Defendants. Doc. 99-7 at 78–80.

"The three essential elements of an action based on an open account claim are: (1) that a sales contract existed between the creditor and debtor; (2) that the amount claimed by the creditor represents either the agreed on sales price or the reasonable value of the goods delivered; and (3) that the goods were actually delivered." *Idearc*

*Media Corp. v. Premier Limousine, LLC*, No. 8:08-CV-1695-JSM-MAP, 2009 WL 482293, at *2 (M.D. Fla. Feb. 25, 2009) (citing *Alderman Interior Systems, Inc. v. First National–Heller Factors, Inc.*, 376 So.2d 22, 24; *Evans v. Delro Industries, Inc.*, 509 So.2d 1262, 1263 (Fla. 1st DCA 1987)). It is undisputed that the goods were delivered and that the parties had a business arrangement for the sale and purchase of the goods. However, as previously noted, there are factual disputes as to the agreed on sales price, which preclude entry of summary judgment.

### E.    Damages

Disputed issues of material fact exist as to the value of the goods, how the value should be calculated, and the total amount owed by Defendants to Plaintiff for the goods delivered. Whether contracts existed, which the Court will determine at trial, will certainly have a large impact on these issues. However, it is undisputed that $969,588 in damages is uncontested. In its motion for summary judgment, Plaintiff moves for partial summary judgment as to the amount of damages Defendants concede, through their expert, is owed. Doc. 102 at 24–25. Defendant did not respond in opposition to Plaintiff's argument (Doc. 116), a fact Plaintiff points out in its reply (Doc. 119 at 7).[12]

In support of its argument, Plaintiff files the report and deposition of defense CPA expert, Anthony Phillips.[13] *See* Docs. 99-9, 99-10. Phillips opined that, based on

---

[12] Defendants did not seek leave to file a sur-reply.

[13] The Court may consider "unsworn expert reports on summary judgment where the experts were examined about their reports, the experts verified the opinions in the reports during their depositions, the experts did not retract or disavow their opinions, and the expert reports were

his analysis of the information provided and his understanding of the historical relationship between the parties, after applying the payments Defendants made to Plaintiff, a total balance of $969,588 remained that Defendants owe Plaintiff. Doc. 99-9 at 13. This calculation appears to be based roughly on factory cost plus two percent. *Id.* at 8–10. In his deposition, Meng deferred to his expert's calculations. Doc. 99-4 at 18. Defendants do not challenge Plaintiff's argument or the amount of damages. If a party fails to address another party's assertion of fact, the Court may "consider the fact undisputed for purposes of the [summary judgment] motion." Fed. R. Civ. P. 56(e)(2). Defendants do not dispute Phillips' opinion, and in fact, they reference in their response defense expert Dong "Daly" Hu's opinion that the value of the goods at issue would be the factory cost plus a three percent broker fee. Doc. 116 at 17.

Under Rule 56, the Court "may enter an order stating any material fact— including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Considering the evidence of record and given Defendants' lack of opposition, the Court finds that it is undisputed that Defendants owe Plaintiff $969,588 in damages to the extent this figure does not include the Meng CIs. As discussed in section B.2 above, disputed questions of material fact exist as to whether Defendants received a direct benefit from the goods referenced in the Meng CIs. Accordingly, the issue of liability and damages as to the Meng CIs will be determined at trial. To the extent the $969,588 includes one or more

exhibits to the experts' depositions." *Goins v. Nationwide Mut. Fire Ins. Co.*, No. 8:11-CV-2771-JDW-AEP, 2013 WL 12156470, at *2 (M.D. Fla. Feb. 8, 2013) (citation omitted).

Meng CIs, the value attributed to the Meng CIs as part of the calculation of damages will be deducted at trial, unless there is a determination that Plaintiff prevails on its claims regarding the Meng CIs.[14]

Accordingly, it is

**ORDERED**:

1.      Defendants' Motion for Summary Judgment as to Counts I, II, VII, VIII, X, and XI of the Plaintiff's Complaint (Doc. 100) is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment (Doc. 102) is **GRANTED, in part,** in that Plaintiff is entitled to judgment in its favor (with the total amount of damages to be determined at trial) on its unjust enrichment claims (as to the BMP CIs), in the event it is determined at trial that no express contracts exist.[15] Plaintiff's Motion

---

[14] Review of Mr. Phillips' report and attachments reveals that one of the Meng CIs (TT17884) may be included in his calculations of damages. *See* Doc. 99-9. An invoice identified as TT17884 appears on the list of "Exception" invoices with a note that it is "In Chinese." *Id.* at 62. The copy of the Meng CI (October 16, 2017 invoice to Coolmaster) that bears the same invoice number "TT17884" (Doc. 99-6 at 336) is not in Chinese. It is unclear whether Mr. Phillips included this Meng CI on his list of "Exception Invoices" or whether it was some other invoice. In any event, both are in the amount of $69,700. The Phillips' report states that in "[i]nstances where information was incomplete, missing, illegible, or not translated to the extent necessary, the comparisons were not included in the analysis to avoid affecting the results." Doc. 99-9 at 6. Thus, even if it was the Meng CI (Doc. 99-6 at 336), it is unclear whether it was included in the analysis, if Phillips' copy of the invoice was in Chinese. Given the Court's conclusion at this juncture that liability has not been established as to the Meng CIs, if the Phillips' analysis included one or more Meng CIs, the Court will make that adjustment at trial, as necessary, after hearing evidence and argument as to whether the October 16, 2017 Coolmaster invoice was included in his analysis and at what recalculated amount. *See* Doc. 99-9 at 9–10.

[15] In the event the Court determines at trial that there is an express contract or contracts between the parties, Plaintiff may not recover under its alternative claims of unjust enrichment, account stated, and open account for those goods that were found to be delivered pursuant to a contract.

for Summary Judgment is further granted to the extent that $969,588 in damages is not genuinely in dispute, to the extent this figure does not include the Meng CIs. In all other respects, Plaintiff's motion (Doc. 102) is **DENIED**.

      3.    By separate notice, the Court will schedule a status conference to discuss scheduling this action for a bench trial.

      **DONE AND ORDERED** in Tampa, Florida on March 31, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any